[No. 35723-9-I.   Division One.   November 24, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH AKERS, *Appellant*.

*Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Francis D. Zavatsky* and *Shannon D. Anderson, Deputies*, for respondent.

KENNEDY, A.C.J. — Larry Hendrix (a/k/a Joseph Akers) appeals his conviction and enhanced sentence for delivery of cocaine within 1000 feet of the perimeter of the Seattle School District's Youth Education Program

(YEP) located in the Alaska Building in downtown Seattle. Hendrix argues, inter alia, that reversal of the sentence enhancement is required under *State v. Becker*, 132 Wn.2d 54, 935 P.2d 1321 (1997) in that (1) the special verdict form contained an improper comment on the evidence, and (2) he had no readily available means of determining that he was in a protected zone at the time of the drug transaction.[1] In *Becker*, a similarly worded special verdict form misidentified YEP as "Youth Employment Education Program School," thereby literally instructing the jury that YEP was a "school." Here, in contrast, the special verdict form did not refer to YEP as a "school." Rather the reference to "Youth Education Program" merely designated the specific location in question for the jury to consider. Accordingly, we find no manifest constitutional error in the special verdict form and decline to reverse the sentence enhancement on that ground. Nevertheless, we reverse the sentence enhancement because the record fails to establish that Hendrix had a readily accessible means of determining, on June 16, 1994, the date of the drug transaction, that he was within 1000 feet of the perimeter of a school ground.

## FACTS

On June 16, 1994, Larry Hendrix and Darryl John were arrested after selling cocaine to an undercover police officer. Seattle Police Officer Fowler contacted John on the corner of Occidental South and South Washington Streets in downtown Seattle and asked him for "soup." John instructed Officer Fowler to follow him and they walked to the 200 block of Yesler Avenue, where John told Officer Fowler to wait while he looked for cocaine. Officer Fowler promised John a piece of cocaine as payment. John then crossed the street, walking in a northerly direction toward a fountain located in Prefontaine Park at the corner of Third Avenue and Yesler, while Officer Fowler waited.

---

[1]Hendrix's remaining contentions are treated in the unpublished portion of this opinion.

While John was still walking toward the fountain, Hendrix approached Officer Fowler from a different direction, either the east or the northeast, and offered to assist the officer. Hendrix then crossed the street and met with John by the fountain. Hendrix and John sat on a bench by the fountain and motioned for Officer Fowler to join them. The officer did so, and sat down between them. Hendrix put a rock of cocaine on the bench; Officer Fowler picked it up and gave Hendrix $20 in prerecorded buy money. After John indicated that he would take money instead of a piece of rock cocaine, Officer Fowler gave him $10 in prerecorded buy money. Officer Fowler then gave a good-buy signal to other officers and left the area. Hendrix and John were intercepted and arrested; each was found in possession of the prerecorded buy money he had been given. The transaction took place within 1000 feet of the Alaska Building, a commercial office building located at Second and Cherry Streets in downtown Seattle. YEP is located on a portion of the third floor of that building.

The State charged Hendrix and John with one count of delivery of cocaine within 1000 feet of the perimeter of school grounds, in violation of RCW 69.50.401(a)(1)(i) and 69.50.435(a). The defendants were tried together.

Before trial, Hendrix moved to strike the school zone enhancement charge, arguing that he had no readily available means of determining that the transaction was taking place in a protected zone and that, in all fairness, potential miscreants ought to have some reasonable means of determining such a fact. The trial court summarily denied the motion.

At trial, Donna Marshall, an employee of the Seattle School District, testified for the State. Although the primary focus of Ms. Marshall's testimony related to whether YEP is or is not a school, the prosecutor asked her, during direct examination, whether she had personal knowledge of any drug-free school zone signs posted in the area of YEP. Ms. Marshall responded that she did, that the sign she was familiar with is about two blocks north of YEP,

on Second Avenue, and that it is "one of those yellow signs, and it does say YEP School." Report of Proceedings at 200. Ms. Marshall stated that the sign also says "[d]rug-free zone." *Id.* On cross-examination, defendant John's counsel referred Ms. Marshall to a newspaper article indicating that signs had been erected near YEP in August of 1994, and asked her whether she was familiar with those signs. Ms. Marshall responded: "That was — yes, I am familiar with it, but it's not the same signs that were put years ago . . . . This was mainly the signs put on because we've been coming down to court." Report of Proceedings at 204. Ms. Marshall made it clear, during the course of her testimony, that she and other School District employees did not appreciate being continually called to court to testify in drug cases arising from transactions in the vicinity of YEP. Neither side asked Ms. Marshall anything further regarding the signs.

The jury found Hendrix guilty of delivering cocaine, and by responding affirmatively to the following inquiry contained in a special verdict form, found that he committed the offense within 1000 feet of the perimeter of school grounds:

> Was the defendant, Larry Hendrix, within 1000 feet of the perimeter of school grounds, to wit: Youth Education Program at the time of the commission of the crime?
>
> Answer:   Yes
>
>          (yes or no)

Clerk's Papers at 29.

This timely appeal followed.

## DISCUSSION

### I

■ Hendrix did not object at trial to the special verdict form, but argues on appeal that the form contains an impermissible comment on the evidence in violation of Wash. Const. art. IV, § 16, which provides that "[j]udges

shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Error that is "manifest" and affects a constitutional right may be raised for the first time on appeal. RAP 2.5(a)(3); *Becker*, 132 Wn.2d at 64.

Hendrix contends that because the special verdict form asked the jury if Hendrix was "within 1000 feet of the perimeter of school grounds, to wit: Youth Education Program" at the time of the commission of the crime, "[i]n effect, the special verdict form told the jury that YEP was a school subject to the enhancement." Appellant's Opening Brief at 20. The State responds as follows:

> The verdict form asked one question, "[W]as the defendant, Larry Hendrix, within 1000 feet of the perimeter of school grounds?" The language "to wit: [Youth Education Program]" simply designates the specific location in question for the jury to consider. Despite the unpolished language in the verdict form, the judge did not convey to the jury his personal belief that YEP was a school. Thus, the jury instruction does not contain an improper comment on the evidence.

Resp't's Br. at 13. We agree with the State.

This special verdict form, although worded similarly to the one that was disapproved by our Supreme Court in *Becker*, is materially different. The special verdict form in *Becker* asked the jury: "[Were] defendant[s], [Donald Becker and Nelson Gantt], within 1000 feet of the perimeter of school grounds, to-wit: Youth Employment Education Program *School* at the time of the commission of the crime?" *Becker*, 935 P.2d at 1326 (emphasis added). The *Becker* majority said:

> YEP's former names included "Youth Employment Program," and before that "Youth Employment Education Program." YEP is not now nor has it ever been called the "Youth Employment Education Program School." By so identifying YEP in the special verdict form the trial court literally instructed the jury that YEP was a school. This error amounted to an impermissible comment on the evidence in violation of art. IV, § 16.

*Becker*, 132 Wn. 2d at 65. The concurring Justices agreed: "By informing the jury in the special verdict form that the Youth Education Program is a school, the trial court essentially resolved that factual issue. That was an obvious comment on the evidence[.]" *Becker*, 132 Wn.2d at 66 (Alexander, J., concurring). The dissenting Justices recognized that the misnaming of YEP was indeed the basis of the majority ruling. After pointing out that the defendants had not objected to the use of the word "school" in the charging documents, the dissenting Justices opined: "The language of the special verdict form tracked the unchallenged language used in the Informations; it did not indicate any personal opinion of the judge." *Becker*, 132 Wn.2d at 78 (Talmadge, J., dissenting).

Thus, we conclude on the basis of the majority, concurring and dissenting opinions in *Becker* that the fatal flaw contained in the special verdict form was the reference to YEP as a "school," and not the fact that YEP was referenced at all. Indeed, when *Becker* was argued before this court the defendants argued, as Hendrix does here, that "by including YEP's name in the special verdict form, the judge instructed the jury that YEP is a school, removing the factual question of whether it is a school from the jury." *State v. Becker*, 80 Wn. App. 364, 373, 908 P.2d 903 (1996), *rev'd in part*, 132 Wn.2d 54, 935 P.2d 1321 (1997). We rejected that broad proposition in *Becker*, 80 Wn. App. at 373-74, and do so now. Although our Supreme Court rejected this court's *additional* conclusion that the *misidentification* of YEP as the Youth Employment Education Program *School* was not a comment on the evidence, it did not disapprove this court's ruling that the "mere inclusion of [YEP's] name in the special verdict form," standing alone, was not a comment on the evidence. *Becker*, 80 Wn. App. at 374. *Contrast Becker*, 80 Wn. App. at 373-74 ("[I]nclusion of YEP's name in the special verdict form specified the institution the jury was to consider; it did not instruct the jury that YEP was a school") with *Becker*, 132 Wn. 2d at 65 ("YEP is not now nor has it ever been called the 'Youth Employment Education Program

School.' By so identifying YEP in the special verdict form the trial court literally instructed the jury that YEP was a school.").

So long as the true name is used, we see no appreciable difference between identifying YEP or any other alleged school as the institution to be considered for purposes of a school zone sentencing enhancement special verdict form and identifying, for example, an alleged deadly weapon, such as a knife having a blade of a disputed length, to be considered for purposes of a typical deadly weapon sentencing enhancement special verdict form. By asking a jury whether a defendant was "armed with a deadly weapon, to-wit: a knife" at the time of an alleged robbery, for example, we do not believe that a judge instructs the jury that the particular knife at issue is a deadly weapon as defined by law, that is, that it either had the capacity to and may readily have inflicted death, or that it had a blade more than 3 inches long, where those are disputed issues at trial, and where the jury has been properly instructed on the law defining deadly weapons and on the burden of proof. Here, the jury was instructed:

> If you find the defendant guilty of delivery of a controlled substance, it will then be your duty to determine whether or not the defendant delivered the controlled substance within one thousand feet of the perimeter of a school ground. You will be furnished with a special verdict form for this purpose.
>
> If you find the defendant not guilty of Delivery of Cocaine, do not use the special verdict form. If you find the defendant guilty, you will complete the special verdict form. Since this is a criminal case, all twelve of you must agree on the answer to the special verdict.
>
> If you find from the evidence that the State has proved beyond a reasonable doubt that the defendant delivered the controlled substance within one thousand feet of the perimeter of a school ground, it will be your duty to answer the special verdict "yes."
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt that the defendant delivered the

controlled substance within one thousand feet of a perimeter of a school ground, it will be your duty to answer the special verdict "no."

Instruction 18, Clerk's Papers at 23. The jury was further instructed on the definitions of "public school," "common school," "perimeter" and "grounds," in Instructions 19, 20 and 21, respectively. Clerks Papers at 24-26, inclusive. Moreover, the jury was instructed that the law does not permit a judge to comment on the evidence in any way, that he had not intentionally done so, and that if it appeared to the jury that he had so commented, either during the trial or in the giving of the instructions, the jury "must disregard such comment entirely." Instruction 1, Clerk's Papers at 6. During closing argument, after reminding the jury that the undisputed evidence was that the transaction occurred 550 feet from the perimeter of the Alaska Building, the State argued, with respect to YEP:

> What is at issue? Whether or not it's a school. Now, Ms. Marshall testified, it's part of the public school system.. It's funded by the public school system. We have classrooms; we have desks; we have flags in the classroom. We teach reading, writing, arithmetic, social studies and science. Our teachers are state certified. They're all paid by the Seattle Public Schools . . . . It is a school within the Seattle Public School system.
>
> . . . .
>
> Here, we're funded by the schools — by Seattle Public Schools. We teach normal things that they have [sic] in school. We have school-age people, ages 15, I believe Ms. Marshall testified, through 21. And if we look at the definition of a school that you're provided in the jury instruction, it says, "Public school means common school, and those schools, and institutions of learning, having a curriculum below the college or university level as established by law and maintained at public expense. Common school means any school main-

tained at public expense in each school district in carrying on a program from kindergarten through 12th grade or any part thereof, including vocational education courses otherwise permitted by law." That's the definition of a school, and YEP easily falls within that.

Report of Proceedings at 255, 256-57. In response, counsel for codefendant John argued that the jury should conclude that YEP is not a school but only a program:

"But, your job is to determine it's a school. It's not the Judge's job. The Judge could have said it's a school a long time ago, and none of you would have had to deal with that issue. Or the State, and the State believes it is a school. That's why they brought this charge[.] . . .

. . . This program's been around for a long time. You heard what Ms. Marshall said; this program's been around for a long time. It used to be called Youth Employment Program. They changed the name to Youth Education Program. Later they're going to change it to Youth Education Program School. They had numerous opportunities every year they registered down with the State Superintendent and not once were they asked to call it a school or even list it in their program — in their directory as a school. Mr. Strosyk testified that YEP [inaudible] is an interagency program. It only deals with programs, and not schools. And he said that's correct.

. . . .

So, why is Ms. Marshall or YEP Program all hot and bothered about coming to court and saying all this and to have even legal counsel to discuss? Simply because [the] State like[s] you to believe that they can prove beyond a reasonable doubt that YEP is a school, when they themselves, for [the] past 14 years never called it a school before . . . .

. . . .

. . . The issue, the sole issue, is whether the Youth Employment Program is a school, and it is not, because it's no different than a home school where a parent who is authorized by the State — or the Seattle Public School teaches their child and gets the same credit . . . .

. . . And that's not what the legislature had in mind. And that's why the State did not decide, we did not decide, the Judge did not decide; it's up to you to decide.

Report of Proceedings at 264-67.

In light of the nature of the disputed evidence at trial regarding whether YEP is a school, the nature of the arguments of counsel during closing, and the clear instructions regarding the State's burden to prove beyond a reasonable doubt that the defendant delivered the controlled substance within 1000 feet of the perimeter of a school ground, no rational juror could have concluded from the language contained in the special verdict form in this case that the trial court had already determined that YEP was a school, that the State was relieved of its burden of proving that fact beyond a reasonable doubt, or that the judge had expressed any personal opinions on that issue. Thus, any constitutional error based on the language contained in the special verdict form is not "manifest" as that term is used in RAP 2.5(a)(3).

An impermissible comment on the evidence allows a jury to infer, from what the court said or did not say, that the judge has a personal belief regarding the testimony in question or the merits of the case. *E.g., State v. Ciskie*, 110 Wn.2d 263, 283, 751 P.2d 1165 (1988). We do not believe that any rational juror could have inferred from this special verdict form that the trial judge believed YEP to be a school merely because the institution was referred to by its legally correct name. Thus, we decline to extend the Supreme Court's ruling in *Becker* to the special verdict form in this case, which is materially different from the

special verdict form in *Becker* in that it did not misname YEP by calling it "Youth Education Program School."[2]

## II

Just before trial, which took place in October 1994, nearly 3 years before the Supreme Court's ruling in *Becker*, Hendrix moved for dismissal of the school zone enhancement charge, arguing that due process requires that a defendant have a readily available or ascertainable means of determining that he or she is in a protected zone at the time of a particular drug transaction. The trial court denied the motion. Hendrix assigned error to that denial in his opening brief for this appeal, but failed to make the same due process argument to this court that he had made to the trial court and that eventually persuaded a majority of the Supreme Court in *Becker*. After hearing oral argument in February 1996, this court stayed the appeal pending the Supreme Court's ruling in *Becker*. After *Becker* came down, we lifted the stay and invited comment from the State and Hendrix regarding the applicability of *Becker* in this appeal. Both sides pointed to the testimony of witness Donna Marshall, the State arguing that her testimony showed that Hendrix had a readily ascertainable means of determining that the drug transaction was taking place in a school zone by reason of the sign two blocks north of YEP identifying the area as a drug-free zone and designating YEP school, and Hendrix

---

[2]After this opinion was filed, appellant filed a Motion to Reconsider in which he characterized the court's ruling with respect to the special verdict form as dicta, in light of our ruling in the next section of this opinion reversing Mr. Hendrix's conviction on other grounds. We have denied the motion to delete or change the ruling with regard to the special verdict form. Although we would not have been required to reach the issue in order to resolve Mr. Hendrix's appeal, the same special verdict form issue has been raised in other appeals now pending in this court. We have elected to reach the issue in order to provide authority for the resolution of those pending appeals without the necessity of filing another published opinion. Mr. Hendrix's appeal provides an appropriate vehicle for reaching the issue because the quality of the briefing is superior to that found in some of the pending appeals and because Mr. Hendrix's appeal was among the first in time to raise the issue, following the Supreme Court's opinion in *Becker*.

arguing that her testimony showed the opposite because she testified that the signs were placed in August 1994, after the date of the drug transaction in this case.

■ Neither side characterizes Marshall's testimony with absolute accuracy. It is impossible to ascertain from the record whether the specific sign located two blocks from YEP referred to by Ms. Marshall during her direct examination is one of the old signs that she said had been in place for years or one of the new signs that was placed in August 1994, apparently as a result of frustration on the part of School District personnel who disliked being continually called into court to testify in drug cases regarding transactions taking place in the vicinity of YEP. But because of Ms. Marshall's repeated references to school district employees' frustration at being called to court to testify on a frequent basis and her statement that the new signs were placed in response to that problem, it is reasonable to infer that a sign specifically referring to "drug-free zone" and "YEP school" is one of the new signs rather than one of the old ones. It is clear that whatever the old signs may have said, they were not the same as the new ones, and that whatever they may have said, they had not cured the problem of school district employees being continually called to testify in YEP-related drug cases. Moreover, Ms. Marshall identified the content of only one sign located two blocks north of YEP; it is not at all clear from the record that this single sign, even if it was in place at the time of the transaction in this case, was sufficient to give notice to persons approaching YEP from the south, east or west that they were entering into a protected zone. Thus, Hendrix makes the most persuasive argument regarding whether Ms. Marshall's testimony about the signs removes this case from the ambit of the *Becker* ruling. We conclude that the testimony regarding the signs is insufficient to show that Hendrix had a readily ascertainable means of determining that he was in a school zone at the time of the drug transaction in this case.

After reviewing the entire record, we also conclude that

none of the other evidence at Hendrix's trial removes this case from the ambit of the *Becker* ruling. Indeed, the evidence in this case regarding signs located within the Alaska Building and regarding other means by which reasonable people might be able to determine that this immediate area is a school zone, for example through the office of the Superintendent of Public Instruction, is indistinguishable from the evidence presented in *Becker*.

■ Having given both sides the opportunity to submit written argument in light of *Becker*, pursuant to RAP 12.1(b), and having considered those arguments in the course of the direct appeal, we will not require that Hendrix file a personal restraint petition in order to raise the same due process issue that he raised at the trial but failed to raise in his opening brief for this appeal. To require Mr. Hendrix to file a personal restraint petition in order to raise the issue would not serve the interests of justice. He was given a 5-year sentence inclusive of the school zone enhancement, has already served 3 of those years and is now commencing to serve the 2-year sentence enhancement, not taking into account any good time that he may have earned. To require a personal restraint petition, which in the normal course takes many months to process, would be a waste of scarce judicial resources and would effectively punish Mr. Hendrix for his appellate counsel's failure to make the same due process argument that was made in the trial court and that eventually prevailed in our Supreme Court.[3]

Accordingly, although we have rejected Hendrix's argument that the special verdict form utilized in this case contained a comment on the evidence, we nevertheless reverse the school zone enhancement on the same due process ground decided by the Supreme Court in *Becker*.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and

[3]Current counsel on appeal did not write Mr. Hendrix's opening brief but did respond to this court's request for supplemental briefing.

will not be published in the Washington Appellate Reports but will be filed of public record in accord with RCW 2.06.040, it is so ordered.

AGID and ELLINGTON, JJ., concur.

After modification, further reconsideration denied January 21, 1998.