132 P.3d 1076 (2006)
156 Wash.2d 709
STATE of Washington, Respondent,
v.
Percy A. LEVY, Petitioner.
No. 75913-8.
Supreme Court of Washington, En Banc.
Argued October 27, 2005.
Decided April 13, 2006.
*1078 Peter B. Tiller, The Tiller Law Firm, Centralia, for Petitioner/Appellant.
Constance Mary Crawley, Snohomish Co. Prosecutors Office, Everett, for Appellee/Respondent.
FAIRHURST, J.
¶ 1 Percy A. Levy seeks reversal of his convictions for first degree burglary, first degree robbery, and unlawful possession of a firearm in the second degree stemming from a home invasion robbery. His primary claim is that several jury instructions constituted judicial comments on the evidence and should be deemed prejudicial per se. He also makes various pro se claims of error by the trial court and the Court of Appeals. We hold that some of the references in the jury instructions were judicial comments on the evidence but that no prejudice resulted. We also hold that the trial court erred in allowing a codefendant's attorney to assert her Fifth Amendment privilege for her, but the error was harmless. The remaining issues are without merit. We affirm the Court of Appeals.

I. FACTS
¶ 2 This case involves a home invasion robbery that took place in an apartment described at trial as a "drug house." At the time of the robbery, there were four people in the apartment: Kenya White, the renter, Jerry Mitchell, Mike Montemayor, and Brianna Thorne. Breena Martin entered the apartment, followed a few minutes later by Denise Bowers. Martin took Bowers into a bathroom, gave her a gun, and told her to take it out to a Chevrolet Suburban owned by John Cox in which Levy had just arrived. When Bowers got out to the Suburban, she asked Levy to come back into the house with her.
¶ 3 Although White allowed Bowers back into the apartment, she tried to keep Levy from entering. Levy, however, forced his way in with a cocked gun in his hand. He waved the gun directing White, Thorne, and Mitchell into a bedroom occupied by Montemayor, pointed the gun at Montemayor, and threatened him with a crowbar. Levy told White, Thorne, Mitchell, and Montemayor to give him their money and jewelry. Montemayor tried to protect himself by lifting up the mattress on the bed, thereby revealing some cash under the mattress, which Levy took. When Thorne refused Levy's demand, he hit her on the "side of the head" and took some jewelry from her. Verbatim Report of Proceedings (VRP) at 61. *1079 Levy, Bowers, and Martin left the apartment and drove away in the Suburban.
¶ 4 White called 911 immediately after Levy, Bowers, and Martin left. Levy was arrested later that day near a Chevrolet Suburban that matched the description of the vehicle in which he had been observed driving away with Bowers and Martin. Police officers found a loaded handgun and tire iron inside the vehicle and found cash and jewelry on Levy.[1]

II. PROCEDURAL HISTORY
¶ 5 Levy was charged with one count of first degree burglary, three counts of first degree robbery, and one count of unlawful possession of a firearm in the second degree. Bowers testified against Levy, but Martin told her attorney she intended to assert her Fifth Amendment right not to testify, and Levy's attorney elected not to call her to assert the privilege in court. The State called Everett Police Officer Jeanne Innes, the police officer who responded to the 911 call and conducted the search of the Suburban. White, Montemayor, Thorne, and Mitchell also testified against Levy for the State.
¶ 6 Cox, the owner of the Suburban, did not testify and Levy did not take the stand. Levy's attorney conducted cross-examinations of all the State's witnesses and elicited testimony of drug use and discrepancies in their statements. Levy did not object to any of the jury instructions. By special verdict, the jury found Levy guilty on all charges except count IV (robbery of Kenya White) and found that he was armed with a revolver, but not a crowbar.
¶ 7 Levy appealed his convictions to the Court of Appeals, Division One. Levy's primary challenge involved five of the jury instructions. He claimed that the instructions constituted judicial comments on the evidence that cannot be subject to harmless error analysis.
¶ 8 Instruction 10 stated, in pertinent part:
To convict the defendant of the crime of burglary in the first degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 24th day of October, 2002, the defendant, or an accomplice, entered or remained unlawfully in a building, to-wit: the building of Kenya White, located at 711 W. Casino Rd., Everett, WA;

....
(3) That in so entering or while in the dwelling or in immediate flight from the dwelling the defendant or an accomplice in the crime charged was armed with a deadly weapon, to-wit: a .38 revolver or a crowbar; and
(4) That the acts occurred in the State of Washington.
Clerk's Papers (CP) at 59 (emphasis added). Instruction 15 stated, in pertinent part:
To convict the defendant of the crime of robbery in the first degree, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 24th day of October, 2002, the defendant, or an accomplice, unlawfully took personal property to-wit: jewelry, from the person or in the presence of another, to-wit: Michael Montemayor;

....
(5) That in the commission of these acts the defendant or an accomplice was armed with a deadly weapon, to-wit: a .38 revolver or crowbar; and
(6) That the acts occurred in the State of Washington.
CP at 64 (emphasis added). Instructions 16 and 17 contained the same language but named Brianna Thorne (a/k/a April Ames) and Kenya White and referred to Counts III and IV, respectively. Instruction 20 stated:

*1080 In regard to Counts I, II, III, and IV, it is alleged that the defendant, or an accomplice, possessed one or more deadly weapons, to-wit: a .38 revolver or a crowbar. To convict the defendant in Counts I, II, III, and IV, the State must prove beyond a reasonable doubt that the defendant possessed one or more deadly weapons. Further, you must unanimously agree as to which deadly weapon or deadly weapons, (a .38 revolver or a crowbar), he possessed.
CP at 72 (emphasis added).
¶ 9 Levy also raised various pro se claims on appeal. In addition, he contended that the trial court violated his right to compel a codefendant to testify in his behalf and that the trial court erred in admitting Cox's consent to search the Suburban.
¶ 10 The Court of Appeals held that some of the "to-wit" references were not judicial comments on the evidence. In particular, it found that the reference to jewelry did not convey an opinion that jewelry was personal property. Likewise, the court stated that references to specific individuals did not impermissibly suggest that the individual qualified as another person. The court concluded, however, that references in other instructions, such as the reference to a revolver or crowbar as a deadly weapon and the reference to White's apartment as a building, arguably were improper comments, but they were harmless. The court denied the pro se claims, ruled that Levy's right to compel witnesses to testify was not denied when the court allowed the codefendant's counsel to assert the codefendant's Fifth Amendment privilege on her behalf, and held that the trial court did not err in admitting evidence of the consent to search.
¶ 11 Levy petitioned for review of the judicial comment issue, several pro se claims of error by the Court of Appeals, the claim that the trial court violated his right to compel a codefendant to testify in his behalf, and the claim that the trial court erred in admitting Cox's consent to search the Suburban. We granted review on all four issues. State v. Levy, 154 Wash.2d 1011, 111 P.3d 263 (2005).

III. ISSUES
A. Is a reference in a jury instruction to a fact that must be proved by the State a judicial comment on the evidence? If so, what is the effect?
B. Did the Court of Appeals err in declaring the record to be insufficient to examine several pro se issues on appeal?
C. Did the trial court violate Levy's right to compel witnesses to testify by allowing Martin's attorney to make a blanket assertion of Martin's Fifth Amendment privilege on her behalf?
D. Did the trial court err in admitting evidence obtained from the Suburban based on the vehicle owner's signed consent to search?

IV. ANALYSIS

A. Is a reference in a jury instruction to a fact that must be proved by the State a judicial comment on the evidence? If so, what is the effect?
¶ 12 Levy argues that five jury instructions included judicial comments on the evidence that removed several elements from the jury's consideration at trial and must be considered structural errors that are not subject to harmless error analysis. Alternatively, he argues that even if the errors were not structural, and prejudicial per se, they cannot survive harmless error analysis. The State makes two primary arguments in response. First, it contends that Levy has not shown that the instructions were manifest errors affecting a constitutional right and, because he failed to object to the instructions at trial, he may not raise the issue for the first time on appeal. Alternatively, the State argues that the elements at issue in the instructions were not in dispute at trial, and, thus, any reference to them was harmless.

1. Has Levy established a manifest constitutional error?

¶ 13 Levy did not assert that the error was a manifest constitutional error in his petition for review. However, in his brief on the merits, he argued that this court has historically accepted review of challenges to *1081 instructions on the grounds that they are judicial comments. The State argues that because Levy did not object to the instruction at trial, in order to establish that the error is manifest he must show that the error affected his rights and an error that is "purely abstract and theoretical" cannot be raised for the first time on appeal. Br. of Resp't at 10. The State further argues that errors in jury instructions are only of constitutional magnitude if they are misleading or fail to inform the jury of the applicable law.
¶ 14 We have long held that even if the defendant fails to object at trial, error may be raised on appeal if it "invades a fundamental right of the accused." State v. Becker, 132 Wash.2d 54, 64, 935 P.2d 1321 (1997) (a reviewing court will "consider a claimed error in an instruction if giving such instruction invades a fundamental right of the accused."); State v. Lampshire, 74 Wash.2d 888, 893, 447 P.2d 727 (1968) (because a comment on the evidence invades a constitutional provision, failure to object does not foreclose raising the issue on appeal); State v. Bogner, 62 Wash.2d 247, 252, 382 P.2d 254 (1963) (even if the evidence is undisputed or overwhelming, comment by the judge violates a constitutional injunction).
¶ 15 The claimed error in the jury instructions here alleges judicial comment on the evidence, not the omission of elements. Because judicial comments on the evidence are explicitly prohibited by the Washington Constitution we conclude that Levy raises an issue involving a manifest constitutional error, and his claim may be heard on appeal even though he did not object to the instructions at trial.

2. Were the references judicial comments on the evidence?

¶ 16 Levy argues that references to the building address, Kenya White, Michael Montemayor, Brianna Thorne, the revolver, the crowbar, and the jewelry "instruct[ed] the jury that matters have been established as a matter of law." Pet. for Review at 5. Levy further argues that it is not necessary for the judge to expressly convey his personal feelings on the evidence for the comments to constitute a violation. Id. He cites to two rulings of this court as support for his claim that the "to-wit" language violated the prohibition on judicial comment. Becker, 132 Wash.2d 54, 935 P.2d 1321; State v. Akers, 136 Wash.2d 641, 965 P.2d 1078 (1998). In Becker, we held that a special verdict form asking whether defendants were within 1,000 feet of school grounds that included the phrase "`to-wit: Youth Employment Education Program [YEP] School"' impermissibly relieved the State of its burden to prove that the program was, in fact, a school. 132 Wash.2d at 64, 935 P.2d 1321. In Akers, we did not reach the question of whether a special verdict form that left out the word "school" in the "to-wit" phrase was judicial comment, but we criticized the Court of Appeals holding that it was not a judicial comment based on Becker. 136 Wash.2d at 644, 965 P.2d 1078.
¶ 17 The State counters that jury instructions must be read as a whole and that the instructions in this case were clearly distinguishable from Becker. The State argues that in Becker the question of whether YEP was a school was critical to the issue of whether the defendants had committed a crime at all. 132 Wash.2d at 63, 935 P.2d 1321. Here, the State contends that because other jury instructions defined the terms "building," "deadly weapon," and "personal property," to interpret the "to-wit" references as a directed verdict would render the other instructions meaningless. Further, the State argues that there was never any dispute that White's apartment is a building, that .38 revolvers or crowbars are deadly weapons, that jewelry is personal property, or that named victims are persons other than the defendant.
¶ 18 We review jury instructions de novo, within the context of the jury instructions as a whole. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995). A judge is prohibited by article IV, section 16 from "conveying to the jury his or her personal attitudes toward the merits of the case" or instructing a jury that "matters of fact have been established as a matter of law." Becker, 132 Wash.2d at 64, 935 P.2d 1321. Moreover, the court's personal feelings on an element of the offense need not be expressly *1082 conveyed to the jury; it is sufficient if they are merely implied. State v. Jacobsen, 78 Wash.2d 491, 495, 477 P.2d 1 (1970); Lampshire, 74 Wash.2d at 892, 447 P.2d 727. Thus, any remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment.
¶ 19 In Becker, the "to-wit" reference in the special verdict form expressly stated that the youth program was a school, a fact that was highly contested by the parties and critical to the case. 132 Wash.2d at 64, 935 P.2d 1321. The question of whether it was a school was also a threshold issue that had to be established for there to be any crime at all. Id. Here, the Court of Appeals concluded that the references to White's apartment as a building and to the revolver and crowbar as deadly weapons were arguably judicial comments. We agree with respect to the references to the building and crowbar.
¶ 20 The only instruction here that is clearly analogous to the instruction in Becker is the reference to "the building of Kenya White, located at 711 W. Casino Rd., Everett, WA." CP at 59. As with the reference in Becker, which named YEP as "a school," the instruction here expressly named White's apartment as "a building." Id. We therefore agree with the Court of Appeals that the use of the word "building" in the instruction improperly suggested to the jury that the apartment was a building as a matter of law.
¶ 21 The reference to the crowbar is also problematic. A crowbar only qualifies as a deadly weapon if it "has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.602. Thus, the State must prove that the crowbar was used in a way that met the criteria of a deadly weapon. We conclude that the Court of Appeals correctly found that the reference to the crowbar as a deadly weapon was likely a judicial comment because the jury need not consider whether the State proved that its use caused it to be qualified as a deadly weapon.
¶ 22 We disagree with the Court of Appeals conclusion that the references to the revolver constituted judicial comment on the evidence. The pattern jury instructions permit a court to instruct the jury that a revolver is a deadly weapon as a matter of law, and the court was well within its authority to so instruct the jury in this case. See 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.06.01, at 29 (1994) (WPIC); WPIC 2.07.02, at 37.
¶ 23 We agree with the Court of Appeals conclusion that referring to jewelry as personal property and the names of the alleged victims as another do not qualify as judicial comment. The pattern jury instructions for the offense of robbery expressly permit the court to instruct the jury that a particular item qualifies as property if it would be appropriate within the context of the case. WPIC 2.21, at 53. Here, because there was no dispute as to whether jewelry was personal property and the only question related to whether jewelry was taken from the victims, it was not inappropriate for the court to instruct the jury that jewelry is personal property.
¶ 24 Similarly, the victim's name is not an element of the offense of robbery. Therefore, it would not constitute a comment on the evidence for the court to name the alleged victim in a jury instruction. Further, we agree with the Court of Appeals that naming the victim does not improperly suggest to the jury that it need not find that the property was taken from another.
¶ 25 We hold that the "to-wit" references to the building and the crowbar qualified as judicial comments and the remaining references did not.

3. How should the effect of a judicial comment be analyzed?

¶ 26 Because we have concluded that some of the references in the jury instructions qualified as judicial comments on the evidence, we must analyze their effect. Levy argues that judicial comments are either prejudicial per se under article IV, section 16, or structural errors subject to automatic reversal under Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).
*1083 ¶ 27 Article IV, section 16 states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Washington courts apply a two-step analysis when deciding whether reversal is required as a result of an impermissible judicial comment on the evidence in violation of article IV, section 16. Judicial comments are presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted. State v. Lane, 125 Wash.2d 825, 838-39, 889 P.2d 929 (1995); Lampshire, 74 Wash.2d at 892, 447 P.2d 727; State v. Stephens, 7 Wash.App. 569, 573, 500 P.2d 1262 (1972), aff'd in part, rev'd in part, 83 Wash.2d 485, 519 P.2d 249 (1974) (the State has the burden of showing that the jury's decision was not influenced, even when the evidence is undisputed or overwhelming); Bogner, 62 Wash.2d at 251, 254, 382 P.2d 254 (burden is not on the defendant to show prejudice; reversible error unless the record affirmatively shows that the defendant could not have been prejudiced by the error; citing cases, including State v. Amundsen, 37 Wash.2d 356, 223 P.2d 1067 (1950), where the court held that the burden was on the State to show no prejudice actually resulted); In re Detention of R.W., 98 Wash.App. 140, 144, 988 P.2d 1034 (1999); see State v. Manderville, 37 Wash. 365, 371, 79 P. 977 (1905).
¶ 28 The presumption of prejudice test has consistently been applied to oral comments made by a judge during the course of a trial. See Bogner, 62 Wash.2d at 252, 382 P.2d 254; Lampshire, 74 Wash.2d at 892, 447 P.2d 727. In one recent case involving a judicial comment on a specific element in a written jury instruction we did not explicitly apply the two-step presumption of prejudice analysis but found the comment to be "tantamount to a directed verdict." Becker, 132 Wash.2d at 65, 935 P.2d 1321. Significantly, however, we did not expressly reject the presumption of prejudice analysis in Becker, we merely reached our conclusion without analyzing the comment's effect. We did not expressly abandon the two-step presumption of prejudice analysis in favor of a prejudicial per se standard.[2]
¶ 29 As an alternative basis for our ruling, both parties cite for different purposes to Neder, 527 U.S. at 8, 119 S.Ct. 1827 (holding that misstatements and omissions in jury instructions are trial-type errors subject to harmless error analysis, not structural errors subject to automatic reversal that affect the entire framework within which the trial proceeds).[3] Levy argues that judicial comments on elements are distinguishable from the trial-type errors at issue in Neder, such as omitted and misstated elements, and more akin to structural errors that are subject to automatic reversal. The State contends that the Neder harmless error test, which has been expressly adopted by this court in other criminal contexts, should also be applied to judicial comments.
¶ 30 There are qualitative differences between structural errors, trial-type errors, and judicial comments. A structural error resists harmless error review completely because it taints the entire proceeding. A trial-type error is harmless if "it appears `beyond a reasonable doubt that the error complained of did not contribute to the verdict *1084 obtained.'" Neder, 527 U.S. at 15, 119 S.Ct. 1827 (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). A judicial comment is presumed prejudicial and is only not prejudicial if the record affirmatively shows no prejudice could have resulted.
¶ 31 With trial-type errors, the Neder harmless error analysis asks the court to determine whether the result could have been the same without the error, which is a different standard than the presumption of prejudice we apply in our judicial comment cases under article IV, section 16. A structural error taints the entire proceeding, whereas a judicial comment may not be prejudicial if the record affirmatively shows that no prejudice occurred. Further, judicial comments on the evidence implicate a state constitutional provision that has no parallel in the federal constitution and the existing state standard adequately addresses the state constitutional concerns.
¶ 32 We hold that the Neder harmless error analysis does not apply to judicial comment claims, although it is properly applied in other criminal contexts. See, e.g., State v. Brown, 147 Wash.2d 330, 340-41, 58 P.3d 889 (2002). We also conclude that judicial comments are not structural errors or prejudicial per se; that is, prejudicial without further analysis. We hold that a judicial comment in a jury instruction is presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted.

4. Did prejudice result in this case?

¶ 33 Levy argues that the errors were prejudicial because absent a finding that the apartment was a building and the crowbar was a deadly weapon, the jury did not decide that all the elements of the offenses were proved.[4] The State argues that the errors were harmless because Levy did not dispute any of those facts. The State also argues that the facts were not critical to Levy's convictions. The critical issues were whether Levy possessed a crowbar and whether he entered the building.
¶ 34 Any similarity we have noted between the instructions here and those in Becker ends when we consider the relative significance of the specific comments in the two cases. The question of whether White's apartment was a building was never challenged in any way by the defendant at trial; whereas in Becker, the issue of whether YEP was a school was highly contested and provided the basis for the entire case. We believe the proper conclusion in this case regarding the reference to the apartment as a building is that the jury could not conclude that White's apartment was anything other than a building. With respect to the crowbar, although it is possible that the jury in this case might have erroneously concluded that it was a deadly weapon, it found that Levy did not possess the crowbar. As a result, he could not have been prejudiced by the comment even if the jury improperly concluded that the crowbar was a deadly weapon.
¶ 35 The fundamental question underlying our analysis of judicial comments is whether the mere mention of a fact in an instruction conveys the idea that the fact has been accepted by the court as true. The instructions here named the type of personal property allegedly stolen, the specific address where the offense allegedly occurred, the specific victims involved, and the two weapons allegedly used. Even if we assumed that all of those facts were judicial comments, we do not believe that prejudice resulted. No one could realistically conclude that a revolver is not a deadly weapon, an apartment is not a building, a specifically named person is not someone other than the defendant, and jewelry is not personal property.
¶ 36 The Court of Appeals in Akers reached a similar conclusion. State v. Akers, 88 Wash.App. 891, 898, 946 P.2d 1222 (1997), aff'd, 136 Wash.2d 641, 965 P.2d 1078 (1998). It reasoned that a "to-wit" reference to a knife in a deadly weapon instruction did not *1085 instruct the jury that a knife is a deadly weapon where the jury is properly instructed on the definition of a deadly weapon. Id. Here as well, the Court of Appeals correctly held that no rational juror would have concluded that jewelry was not property, the named victims were not someone other than Levy, a revolver was not a deadly weapon, or an apartment located at a specific address was not a building. Although we criticized the Court of Appeals reasoning in Akers, we did not conduct a detailed analysis because we affirmed on other grounds. Based on the analysis set out above, we conclude that the jury in this case was not relieved of its duty to determine that all the elements of the offenses had been proved by the State.
¶ 37 Thus, we agree with the Court of Appeals that while some of the references included in the jury instructions were judicial comments on the evidence, the errors were not prejudicial. We therefore affirm the Court of Appeals.

B. Did the Court of Appeals err in declaring the record to be insufficient to examine several pro se issues on appeal?
¶ 38 Levy's second claim is that the Court of Appeals erred in failing to rule on several pro se issues based on the insufficiency of the record. He alleges that the court's failure to obtain a copy of the verbatim report of proceedings caused it to improperly review the issues. The State did not respond to any of these issues.

1. Evidence of John Cox's consent to search the Suburban

¶ 39 Levy argues that the Court of Appeals erred by not reviewing the trial court's decision to admit evidence of the gun found in the Suburban. He had claimed at trial that the gun was inadmissible because it was based only on a consent form signed by Cox and the testimony of the officer who obtained Cox's consent. Levy argued that a second officer who participated in the search of the vehicle should have been called to corroborate Cox's consent, citing State v. Davis, 73 Wash.2d 271, 438 P.2d 185 (1968). Davis dealt with the State's failure to call a law enforcement officer at trial. Id. at 275, 438 P.2d 185. We held the officer was "peculiarly available" to the State and failure to call him raised an inference that his testimony would be unfavorable to the State. Id. at 276-77, 438 P.2d 185.
¶ 40 Levy is incorrect that the Court of Appeals did not consider this argument. The court concluded that Cox was not "peculiarly available to the State," as required by Davis. State v. Levy, noted at 121 Wash.App. 1079, 2004 WL 1326813 at *7, 2004 Wash.App. LEXIS 1206, at **19-20. Regarding the second officer, the court merely stated that there was no reference to him in the record.[5]Id. The court concluded, however, that even if the officer was present during the search, there were also several other officers present, suggesting the additional testimony was cumulative. Id. Thus, even though the court did not find the three brief references to the officer in the record, it did specifically consider the value his testimony would have had, so this issue is without merit.

2. Effectiveness of Levy's attorney at the suppression hearing

¶ 41 Levy next argues that the Court of Appeals failed to analyze whether his attorney, Charles Markwell, was ineffective at the suppression hearing because he failed to prepare for the hearing and his arguments were inadequate. Levy is incorrect that the court did not address this issue.
¶ 42 In order to prove ineffective assistance of counsel, a defendant must show that the attorney's performance was deficient and that prejudice resulted. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). The Court of Appeals applied this rule and held that Markwell's arguments during the suppression hearing were appropriate in relation to the facts of the case and that Levy failed to provide evidence that a different outcome would have occurred. *1086 Levy, 2004 WL 1326813, at **7-8, 2004 Wash.App. LEXIS 1206, at **20-21. The Court of Appeals properly concluded that Levy did not demonstrate how Markwell's actions were deficient or how he was prejudiced, so this claim is also without merit.

3. Request by Levy's attorney to withdraw

¶ 43 Levy argues that the Court of Appeals erred in failing to review the record regarding his attorney's request to withdraw. He is correct that the court did not find a reference to the request, although it is in the record. Id. 2004 WL 1326813, at **9-10, 2004 Wash.App. LEXIS, at **25-26; Suppl. VRP (SVRP) at 3-8. Levy's main contention, however, is that the trial court failed to hold a reasonable inquiry into the attorney's request. This statement is incorrect. The trial court held extensive colloquy with Markwell before denying his request to withdraw. Levy, 2004 WL 1326813, at **9-10, 2004 Wash.App. LEXIS 1206, at **25-26. The court held that there was no conflict of interest merely because the client and attorney disagreed about the trial strategy, so this claim is without merit. Id.

4. Ineffectiveness of Levy's attorney for not challenging Levy's offender score at sentencing

¶ 44 Levy contends that the Court of Appeals failed to analyze whether his attorney was ineffective for not challenging Levy's offender score at his sentencing hearing. Levy is correct that the court said it was unable to locate the record for the sentencing hearing, although it did conduct an assessment of the effectiveness of Levy's attorney overall and found it adequate. Id. The court further stated that Levy failed to demonstrate that he was prejudiced by the attorney's performance at the sentencing hearing by showing that the score was miscalculated. Id.
¶ 45 We note that the discussion Levy is referring to occurred during a second sentencing hearing held to consider the State's motion for reconsideration of the sentence. SVRP at 17-28. Levy is correct that a misdemeanor conviction in California was given a higher score because it was considered a felony in Washington. However, he was not prejudiced by that score and his counsel was not ineffective. The record indicates that even if that particular score had been reduced, Levy had already exceeded the standard range of nine or more on each of the offenses, so there would have been no effect on his sentence. Id.

5. Wearing a jail identification bracelet in front of the jury

¶ 46 Levy claims that the Court of Appeals erred in failing to analyze his claim that his Sixth and Fourteenth Amendment rights were violated when he was required to wear a red identification bracelet during the trial. Levy is correct that the Court of Appeals stated that it was unable to find any indication in the record that he was wearing the identification bracelet. However, the court noted that Levy failed to object at trial and said it could not determine how Levy was prejudiced. Levy, 2004 WL 1326813, at *9, 2004 Wash.App. LEXIS 1206, at *25.
¶ 47 The record shows that the trial court discussed the identification bracelet with both attorneys during the second sentencing hearing. SVRP at 8-11. A defendant may not be required to appear in court in restraints because the jury may infer that the defendant is dangerous or untrustworthy. However, the bracelet described in the record was not a restraint; it was more comparable to jail attire. Washington courts have acknowledged that wearing jail attire is often used as a defense tactic to gain sympathy, so a defendant must object to being compelled to wear jail attire in court or he waives the right to argue the issue later. State v. Sanchez, 122 Wash.App. 579, 587-88, 94 P.3d 384 (2004). Since Levy did not object to wearing the identification bracelet during trial, he waived the right to raise the issue now.
¶ 48 We find each of Levy's specific pro se claims to be without merit.

C. Did the trial court violate Levy's right to compel witnesses to testify by allowing Martin's attorney to make a blanket assertion of Martin's Fifth Amendment privilege on her behalf?
¶ 49 The standard of review for a claim of constitutional error is whether the *1087 court can conclude that the error was harmless beyond a reasonable doubt. State v. Lougin, 50 Wash.App. 376, 382, 749 P.2d 173 (1988) (citing Chapman, 386 U.S. 18, 87 S.Ct. 824).
¶ 50 Levy argues that his constitutional right to compel witnesses to testify was violated when the court relied on a statement by Martin's attorney that Martin had asserted her Fifth Amendment right not to incriminate herself. He argues that Martin's attorney did not have the authority to assert the privilege for Martin, and she should have been required to take the stand to assert the privilege. The State did not present arguments contesting this issue.
¶ 51 Both the sixth amendment to the United States Constitution and the Washington Constitution protect a defendant's right to compel the testimony of witnesses. See Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Maupin, 128 Wash.2d 918, 924, 913 P.2d 808 (1996). However, a "valid assertion of the witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's Sixth Amendment rights." United States v. Goodwin, 625 F.2d 693, 700 (5th Cir.1980).
¶ 52 The Fifth Amendment privilege is only applicable where the defendant has "`reasonable cause to apprehend danger from a direct answer.'" Id. (quoting Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)). The court must determine whether the privilege is applicable and a witness cannot establish the privilege merely by making a "blanket declaration... that he cannot testify for fear of self-incrimination." United States v. Gomez-Rojas, 507 F.2d 1213, 1220 (5th Cir.1975). The trial judge must inquire into the legitimacy of the assertion and the scope may not extend to all relevant questions. Id. If the judge has "specialized knowledge" of the likely testimony, and can determine whether the privilege is properly asserted for that witness, the judge may allow the witness to refuse to answer all questions. United States v. Moore, 682 F.2d 853, 856 (9th Cir. 1982). As with other issues of constitutional magnitude, the court will only affirm if it can say that the error was harmless beyond a reasonable doubt. Id. at 858. "[N]ot every trial error, even one of constitutional dimension, requires reversal of a criminal conviction." Id. at 857.
¶ 53 Here, Martin made a "blanket declaration" that she could not testify without fear of incriminating herself in her own separate trial, but she did not make the assertion to the trial judge; her attorney made it for her. The Court of Appeals concluded that as Levy's codefendant, Martin was entitled to assert the privilege and that Goodwin does not require the defendant to personally assert it before the court. Levy, 2004 WL 1326813, at *8, 2004 Wash.App. LEXIS 1206, at *21. Nevertheless, this flies directly in the face of the rule that a "blanket declaration" is insufficient without further inquiry. It is questionable that the court could adequately inquire into Martin's reasons for asserting the privilege without actually speaking to her because the court's mandate is to determine whether the assertion is legitimate. It is also possible that Martin could have answered some questions without incriminating herself. For these reasons, the trial court erred in not requiring that Martin personally assert her Fifth Amendment privilege.
¶ 54 Nevertheless, we conclude the error in this case was harmless beyond a reasonable doubt because there was such clear evidence presented as to Levy's participation in the crime. We therefore affirm the Court of Appeals on other grounds.

D. Did the trial court err in admitting evidence obtained from the Suburban based on the vehicle owner's signed consent to search?
¶ 55 An appellate court reviews findings of fact related to a motion to suppress under the substantial evidence standard. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Substantial evidence is "evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." Id. We review conclusions of law pertaining to suppression of evidence de novo. Id. Unchallenged findings of fact are *1088 verities on appeal. State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003).
¶ 56 Levy argues that there was insufficient evidence that John Cox, the owner of the Suburban, consented to a search of the vehicle. He claims that the consent form signed by Cox was insufficient without corroborating testimony by Cox or another officer present at the time of the search. The State did not make counter arguments on this issue.
¶ 57 A witness with knowledge may testify that something is what it is claimed to be. ER 901. Officer Innes, the officer who obtained consent from Cox to search the vehicle, testified at trial that the signature on the consent form was obtained from Cox at the time of the search. Levy claims that Officer Innes' testimony was insufficient to authenticate Cox's consent; however, Levy's claim is not supported by the rules of evidence.
¶ 58 Moreover, Levy did not assign error to the trial court's findings of fact regarding admission of the consent form. At trial, Levy's attorney failed to file a motion to suppress the consent to search the vehicle, choosing instead to make a motion in limine immediately prior to the start of trial. The trial judge properly denied Levy's motion on the grounds that it should have been made at the suppression hearing.
¶ 59 We hold that because Levy did not move to suppress the consent form signed by Cox at the suppression hearing and he did not assign error to the trial court's findings of fact regarding the consent form, he cannot now challenge it on appeal.

V. CONCLUSION
¶ 60 We affirm the Court of Appeals with regard to the judicial comment issue. Although we find that the references to the apartment as a building and the crowbar as a deadly weapon constituted judicial comments, we hold that none of the references actually resulted in prejudice to Levy. We find that Levy's specific pro se claims are without merit. With regard to Levy's Sixth Amendment claim, we affirm the Court of Appeals on other grounds. We hold that the trial court erred in not requiring Martin to personally assert her Fifth Amendment privilege, but the error was harmless. Finally, Levy's claim of trial court error in admitting evidence obtained from the Suburban fails because he did not properly move to suppress the consent form, and he did not assign error to the trial court's findings of fact.
Concurring: ALEXANDER, C.J., C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, and J.M. JOHNSON, JJ.
SANDERS, J. (concurring).
¶ 61 The majority finds the trial court violated Percy Levy's Sixth Amendment right to compulsory process by permitting Breena Martin to assert her Fifth Amendment privilege against self-incrimination through counsel. But it holds the error harmless in the face of "such clear evidence" and affirms Levy's conviction. Majority at 1087. I concur in result. But the trial court's violation of Levy's right to compulsory process was harmless only because Martin could have asserted her Fifth Amendment privilege in response to any relevant question, not because of the volume of evidence against Levy.
¶ 62 We may excuse as "harmless error" only an "error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341 (1947). In other words, an error is harmless only if does not affect the evidence properly presented to the jury.
¶ 63 Thus, we cannot excuse a violation of the right to compulsory process resulting in the suppression of relevant evidence. "[I]t is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors." State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946). The assumption a court "can determine what evidence or instruction influenced the jury's decision" is "a tacit admission that an appellate court is necessarily engaging in fact-finding." Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L. REV. 277, 279 (1995-96). And we "have no right to trench upon *1089 the province of the jury upon questions of fact." Jensen v. Shaw Show Case Co., 76 Wash. 419, 421, 136 P. 698 (1913). See WASH. CONST. art. I, § 21 and U.S. CONST. AMEND. VI (guaranteeing trial by jury). Failure to investigate an illegitimate or overbroad assertion of privilege is grounds for reversal.
¶ 64 But here, the trial court's error was harmless for a different reason: Proper inquiry could not have produced evidence of assistance to the defense. Martin was Levy's codefendant. Levy's counsel accepted her assertion of privilege. Levy fails to tender any line of inquiry avoiding Martin's assertion of privilege. And none is readily apparent. An independent investigation of Martin's assertion of privilege could only have confirmed its legitimacy.
¶ 65 Accordingly, I concur.
NOTES
[1] The vehicle was searched while Levy was at the police station under arrest. The search was conducted by Everett Police Officer Jeanne Innes, who later testified at trial.
[2] Washington courts have concluded that judicial comments were harmless in at least two cases. State v. Lane, 125 Wash.2d 825, 840, 889 P.2d 929 (1995) (a judicial comment regarding the credibility of a witness did not prejudice one of the defendants because there was overwhelming untainted evidence supporting his conviction); State v. Holt, 56 Wash.App. 99, 106, 783 P.2d 87 (1989) (to convict instructions that specified the material alleged to be lewd were harmless beyond a reasonable doubt because other instructions provided a definition of "lewd").
[3] Neder cites a "very limited class of errors" that qualifies as "structural" error. 527 U.S. at 8, 119 S.Ct. 1827. The list includes Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable doubt jury instruction); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in grand jury selection); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self representation); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased judge at trial).
[4] Although Levy's argument also referred to the revolver, the jewelry and the named victims we do not include them in our analysis here because we have concluded that those references were not judicial comment.
[5] The second officer was briefly mentioned in the record regarding the search of the vehicle. However, based on the references, it does not appear that he was involved in obtaining the vehicle owner's consent; he merely assisted in the search of the vehicle and witnessed the signing of the consent form.