IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Involuntary Treatment of | ) | No. 34045-7-III |
| | ) | |
| | ) | |
| L.T.S.[†] | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — L.T.S. appeals the trial court's order committing him for involuntary mental health treatment. He argues the trial court improperly commented on the evidence in violation of article IV, section 16 of the Washington Constitution when it gave a jury instruction based on RCW 71.05.285. Because the instruction was based on substantive law, not legislative intent—as was the case in *In re Detention of R.W.*, 98 Wn. App. 140, 988 P.2d 1034 (1999)—we hold the instruction was not constitutionally prohibited and affirm.

---

[†] We grant appellant's motion to change the caption and all references in the opinion from his name to his initials. *See In re Det. of D.F.F.*, 172 Wn.2d 37, 256 P.3d 357 (2011).

FACTS

In January 2016, L.T.S. was receiving outpatient mental health services under a less restrictive alternative (LRA) order, which was set to expire in mid-January.[1] L.T.S. was evaluated by Daniel Pitts, an advanced registered nurse practitioner, and Kathy Mills-George, a county-designated mental health professional. On January 8, Mr. Pitts and Ms. Mills-George filed a petition to extend L.T.S.'s LRA treatment by 180 days. They alleged he was gravely disabled as a result of a mental disorder.

The case proceeded to trial. Mr. Pitts testified that L.T.S. had been admitted to impatient treatment nine times due to decompensation in his mental status. He also testified that several of the admissions were because L.T.S. stopped taking his medications, and that every time L.T.S. stopped taking his medications he ended up in the hospital.

Ms. Mills-George testified that L.T.S. had a history of not taking his medication and this had led to contact with law enforcement and incarceration. She also testified that L.T.S. decompensated when he discontinued his medications, and this decompensation is what led to contact with law enforcement or hospitalization.

---

[1] LRA treatment is a court-ordered program of individualized treatment in a living arrangement that is less restrictive than inpatient treatment, such as in a residential facility or in the person's own home. *See* RCW 71.05.020(26); WAC 388-877-0200.

L.T.S.'s case manager testified that L.T.S. had a cyclical pattern in which he would be hospitalized, be released, discontinue his medications, be arrested, go to jail, and then go to a psychiatric hospital. The case manager described how L.T.S. decompensated when he was not on his medication, and how this led to hospitalization or incarceration.

L.T.S. testified on his own behalf. He testified that he does not have a mental illness and does not consider himself gravely disabled.

In instruction number 10, the trial court instructed the jury to give "great weight" to L.T.S.'s history of decompensation and discontinuation of treatment resulting in hospitalization or law enforcement intervention. Clerk's Papers (CP) at 187. L.T.S. did not object to this instruction.

The jury found that L.T.S. had a mental disorder, that he was gravely disabled, and that his and others' best interests would be served by LRA treatment. The trial court committed L.T.S. for 180 days of LRA treatment. L.T.S. appeals.

## ANALYSIS

A.    THE APPEAL IS NOT MOOT

L.T.S.'s 180-day term of involuntary commitment term has expired. However, L.T.S. argues this case is not moot because the involuntary commitment order may have

3

adverse consequences on him in future commitment proceedings and is also a matter of continuing and substantial public interest. The State does not argue that this case is moot.

"An individual's release from detention does not render an appeal moot where collateral consequences flow from the determination authorizing such detention." *In re Det. of M.K.*, 168 Wn. App. 621, 626, 279 P.3d 897 (2012). Under RCW 71.05.012, .212. and .245, "each order of commitment entered up to three years before the current commitment hearing becomes a part of the evidence against a person seeking denial of a petition for commitment." *M.K.*, 168 Wn. App. at 626. In other words, a trial court presiding over future involuntary commitment hearings may consider L.T.S.'s prior involuntarily commitment orders when making its commitment determination. *Id.* at 629.

Because involuntary commitment orders have adverse consequences in future commitment proceedings, L.T.S.'s appeal is not moot despite the fact that the term of his involuntary treatment has expired.

B.    ALLEGED JUDICIAL COMMENT ON THE EVIDENCE

L.T.S. argues that the trial court improperly commented on the evidence when it gave jury instruction 10, thus violating article IV, section 16 of the Washington Constitution.[2] Specifically, L.T.S. argues the trial court commented on the evidence

---

[2] Although L.T.S. did not object to instruction 10 at trial, "[b]ecause the

4

when it instructed the jury to give "great weight" to his history of decompensation and discontinuation of treatment resulting in hospitalization or law enforcement intervention. This court reviews whether a jury instruction amounts to a comment on the evidence de novo. *State v. Butler*, 165 Wn. App. 820, 835, 269 P.3d 315 (2012).

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "Because the jury is the sole judge of the weight of the testimony, a trial court violates this prohibition when it instructs the jury as to the weight that should be given certain evidence." *R.W.*, 98 Wn. App. at 144.

"[A]n instruction which does no more than accurately state the law pertaining to an issue does not constitute an impermissible comment on the evidence by the trial judge under Const. art. 4, § 16." *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). "An impermissible comment is one which conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed or disbelieved the particular testimony in question." *Id.*

---

constitution expressly prohibits any judicial comment on the evidence, a claimed error based upon such a comment involves a manifest constitutional error that may be challenged for the first time on appeal." *State v. Besabe*, 166 Wn. App. 872, 880, 271

In *Hamilton*, the trial court instructed the jury to give "'special consideration'" to the opinion of the plaintiff's attending physician. *Id.* at 570. On appeal, the State argued that the instruction was an unconstitutional judicial comment on the evidence. *Id.* In rejecting the State's argument, the *Hamilton* court noted the instruction was not a personal opinion of the trial judge but instead stated a long-standing rule of law. *Id.* at 571.

In *City of Seattle v. Smiley*, the city of Seattle charged the defendant with prostitution loitering. 41 Wn. App. 189, 190, 702 P.2d 1206 (1985). The trial court instructed the jury that "'the circumstances which may be considered in determining whether the actor intends such prohibited conduct are that he: 1. Repeatedly beckons to . . . passersby in conversation; or 2. Repeatedly stops or attempts to stop motor vehicle operators.'" *Id.* at 191 n.2 (quoting former Seattle Municipal Code 12A.10.010 (1973)). The instruction was worded identically to Seattle's prostitution loitering ordinance. *Id.* at 191. The *Smiley* court held that the instruction was not an unconstitutional comment on the evidence because it was an accurate statement of the law and did not suggest the judge's personal attitude toward the merits of the case. *Id.* at 192.

---

P.3d 387 (2012).

6

In contrast, in *R.W.*, doctors at Western State Hospital petitioned the court to involuntarily commit R.W. to inpatient treatment for 90 days. *R.W.*, 98 Wn. App. at 142. The trial court instructed the jury that

> Before the respondent can be detained for a period not to exceed 90 days at Western State Hospital, it must be proved by clear, cogent and convincing evidence that no less restrictive treatment is in the best interest of the respondent or others.
>
> *A prior history of decompensation leading to repeated hospitalizations or law enforcement interventions should be given great weight in determining whether a new less restrictive alternative commitment is in the best interest of the respondent or others.*

*Id.* at 144.

The *R.W.* court held the instruction was an impermissible comment on the evidence because it instructed the jury on the weight to give certain evidence. *Id.* at 145. The court acknowledged the general rule that an instruction that accurately states the law is not a comment on the evidence. *Id.* However, the court reasoned that this rule did not apply because the basis for the trial court's instruction was RCW 71.05.012, which was the section headed "Legislative intent and finding." *Id.* at 144-45. Because a statement of legislative intent lacks operative force in itself, the *R.W.* court held that it was not substantive law and could not be used to justify the trial court's instruction.[3] *Id.* at 145.

---

[3] The *R.W.* court noted the instruction was also similar to RCW 71.05.285 (the

Here, the trial court gave instruction 10, which instructed the jury that

[i]n determining whether an involuntary commitment is appropriate, great weight shall be given to evidence of a prior history or pattern of decompensation and discontinuation of treatment resulting in: (1) Repeated hospitalizations; or (2) repeated peace officer interventions resulting in criminal charges, diversion programs, or jail admissions. Such evidence may be used to provide a factual basis for concluding that the individual would not receive, if released, such care as is essential for his or her health or safety.

CP at 187.

RCW 71.05.285 provides that

In determining whether an inpatient or less restrictive alternative commitment under the process provided in RCW 71.05.280 and *71.05.320(2) is appropriate, great weight shall be given to evidence of a prior history or pattern of decompensation and discontinuation of treatment resulting in: (1) Repeated hospitalizations; or (2) repeated peace officer interventions resulting in juvenile offenses, criminal charges, diversion programs, or jail admissions. Such evidence may be used to provide a factual basis for concluding that the individual would not receive, if released, such care as is essential for his or her health or safety.

---

statute at issue in this case), but then stated, "Both parties agree that this statute is inapplicable." *R.W.*, 98 Wn. App. at 144 n.2. The *R.W.* court did not explain why RCW 71.05.285 was inapplicable, but the likely reason was because RCW 71.05.285 at the time only applied "[f]or the purposes of continued less restrictive alternative commitment." Former RCW 71.05.285 (1997). Thus, the basis for the instruction in *R.W.* could not have been RCW 71.05.285 because the doctors only petitioned for continued inpatient treatment, and did not petition for continued LRA treatment.

The legislature amended RCW 71.05.285 expressly in response to the *R.W.* decision. *See* S.B. REP. ON S.B. 5048, at 1, 57th Leg., Reg. Sess. (Wash. 2001). The legislature made the statute apply to petitions for inpatient commitment *as well as* LRA commitment. *See* LAWS OF 2001, ch. 12, § 1.

8

Instruction 10 is worded nearly identically to RCW 71.05.285. As in *Hamilton* and *Smiley*, and unlike in *R.W.*, the instruction is an accurate statement of substantive law. In giving the instruction, the trial court did not convey its own personal belief that the jury should give "great weight" to L.T.S.'s prior history of decompensation and discontinuation of treatment. Rather, RCW 71.05.285 itself required the jury to give great weight to these factors. We conclude the trial court did not unconstitutionally comment on the evidence by giving the instruction at issue.

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

9