IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Involuntary Treatment of: | ) | No. 34388-0-III |
| | ) | |
| | ) | |
| B.W. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — B.W. appeals the trial court's April 2016 order

committing him to 180 days of involuntary treatment. The order committed him on the

basis that he was gravely disabled. B.W. argues the State presented insufficient evidence

of grave disability under either statutory definition in RCW 71.05.020(17). Because

sufficient evidence supports the trial court's conclusion that B.W. was gravely disabled

under subsection (b), we affirm.

FACTS

In July 2015, B.W. voluntarily admitted himself to Foothills Evaluation and

Treatment Facility (Foothills) because he had thoughts about harming other people. B.W.

had previously been diagnosed with paranoid schizophrenia. While at Foothills, B.W.

reported having command hallucinations instructing him to kill his family members in

southwestern Washington. He asked to be discharged from Foothills so he could go to southwestern Washington.

In light of B.W.'s request to be discharged, a designated mental health professional filed a petition to involuntarily detain him for up to 72 hours on the basis that he posed a likelihood of serious harm to others. The next day, a nurse practitioner and psychologist filed a petition to involuntarily detain and treat B.W. for 14 days, again on the basis that he posed a likelihood of serious harm to others. B.W. was appointed counsel and stipulated that his mental disorder resulted in a likelihood of serious harm to others. The trial court entered an order committing him to 14 days of involuntary treatment at Foothills.

The next day, the nurse practitioner and psychologist filed a petition to involuntarily detain and treat B.W. for 90 days on the bases of likelihood of serious harm to others and grave disability. B.W., through counsel, stipulated to these allegations. The trial court entered an order committing him to 90 days of involuntary treatment, beginning at Foothills and then at Eastern State Hospital once a bed became available. B.W. was transferred to Eastern State the next week.

In early October 2015, shortly before the expiration of the 90-day order, B.W. was interviewed by Dr. Darlene Walsh-Martin. B.W. told Dr. Walsh-Martin he experienced

homicidal ideations two or three times per day. He also stated he did not need medication and wanted to leave the hospital. Dr. Walsh-Martin believed further detention and treatment were appropriate. Dr. Walsh-Martin met with B.W.'s psychiatrist, Dr. Catherine Miller, who also believed B.W. was psychiatrically unstable and needed continued hospitalization.

Dr. Walsh-Martin and Dr. Miller filed a petition to involuntarily detain B.W. for 180 days on the bases of likelihood of serious harm to others and grave disability. B.W., through counsel, stipulated to the allegations in the commitment petition. The trial court entered an order committing him to 180 days of involuntary treatment solely on the basis of grave disability.

In late March 2016, shortly before the expiration of the 180-day order, B.W. was interviewed by Dr. Patricia Gunderson, a psychologist at Eastern State. B.W. told Dr. Gunderson his thoughts of hurting other people had not decreased by much. He also stated he did not want to be discharged from Eastern State because of his homicidal ideations and because he did not want to go back to prison.

Dr. Miller and Dr. Gunderson filed a petition to detain B.W. for an additional 180 days. The petition alleged B.W. was gravely disabled. The petition also incorporated a four page report from Dr. Gunderson, which detailed B.W.'s treatment history. The

3

report concluded B.W. was gravely disabled because his mental disorder impaired his cognitive and volitional functioning, he exhibited assaultive behavior and homicidal ideations, and he was homeless. B.W. was appointed counsel, was advised of his rights, and requested a hearing on the petition.

At the hearing, B.W.'s counsel stated the hearing would not be "particularly adversarial." Report of Proceedings (RP) at 2. Rather, B.W. requested the hearing so he could hear, under oath, what Dr. Gunderson's concerns were and what she expected from him. B.W. also wanted to explore the possibility of being a voluntary patient, so that his time at Eastern State would count toward his probation.

The State called Dr. Gunderson. Dr. Gunderson testified B.W. suffers from schizoaffective disorder, borderline I.Q. (intelligence quotient), polysubstance use disorder, and cluster B personality features. She described B.W.'s symptoms, which included auditory hallucinations, impaired sleep, paranoia, anxiety, and homicidal ideations.

Dr. Gunderson testified about her concerns with discharging B.W. from Eastern State. Her concerns included B.W.'s history of going off his medications, as well as his need for a place to live, after-care services, and inpatient chemical dependency treatment. She testified B.W. had been taking his medications for several weeks, but had a history of

4

refusing them while at Eastern State and going off them while in the community. She stated B.W.'s history suggested he would not take his medications or go to appointments if he were discharged from the hospital. She was also concerned he would not comply with after-care services. She agreed the hospital level of care was currently essential for B.W.'s health and safety needs, and B.W. would not likely be able to take care of those needs if released.

Dr. Gunderson further testified the treatment plan for B.W. was to continue treating his psychotic symptoms and get him into substance abuse treatment. She did not believe B.W. would be a good faith voluntary patient, citing his prior refusals to take medication, go to treatment mall, and follow staff directions. She also believed his request to be a voluntary patient was an attempt to manipulate the legal system.

The trial court entered an order committing B.W. to 180 days of involuntary treatment on the basis that he continued to be gravely disabled. The court entered findings of fact consistent with the definitions of "gravely disabled" in RCW 71.05.020(17):

VI.
As a result of a mental disorder it is highly probable that respondent is in danger of serious physical harm resulting from a failure to provide for his/her essential human needs of health or safety manifested by:
(1) failure or inability to provide or obtain nourishment.
(2) failure or inability to provide or obtain clothing or shelter.

5

(3) failure to obtain and/or participate in medical treatment.

VII.

(1) Respondent has manifested his/her deterioration in routine functioning evidenced by loss of cognitive or volitional control over his/her actions.

(2) Respondent would not receive, if released, essential care for his/her health or safety.

Clerk's Papers (CP) at 81-82. The order then stated: "Respondent stipulates that the allegations contained in the petition are true and correct and incorporated by reference herein as findings of fact." CP at 82. Following the hearing and entry of the order, B.W. filed a timely notice of appeal.

## ANALYSIS

B.W. argues insufficient evidence supports the trial court's conclusion that he was gravely disabled.[1]

"[I]nvoluntary commitment for mental disorders is a significant deprivation of liberty which the State cannot accomplish without due process of law." *In re Det. of LaBelle*, 107 Wn.2d 196, 201, 728 P.2d 138 (1986). Mental illness alone is not a constitutionally adequate basis for involuntarily committing someone. *Id.* Accordingly,

---

[1] Although B.W.'s 180-day term of involuntary commitment has expired, this appeal is not moot because an involuntary commitment order may have adverse consequences on future involuntary commitment determinations. *In re Involuntary Treatment of L.T.S.*, 197 Wn. App. 230, 233-34, 389 P.3d 660 (2016); *In re Det. of M.K.*,

6

"a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 576, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). "Generally, under the statute, RCW 71.05, persons may be involuntarily committed for treatment of mental disorders if, as a result of such disorders, they either (1) pose a substantial risk of harm to themselves, others, or the property of others, or (2) are gravely disabled." *LaBelle*, 107 Wn.2d at 201-02 (citing RCW 71.05.020(1), (3), .150, .240, .280, .320). Here, the trial court involuntarily committed B.W. on the basis that he was gravely disabled.

A.    B.W.'S STIPULATION IS NOT DISPOSITIVE

The State asks this court to affirm the commitment order because B.W. stipulated to the allegations in the commitment petition, which included an allegation that B.W. was gravely disabled.

"A 'stipulation' is an express waiver that concedes, for purposes of trial, the truth of some alleged fact, with the effect that one party need offer no evidence to prove it and the other is not allowed to disprove it." *State v. Case*, 187 Wn.2d 85, 90-91, 384 P.3d 1140 (2016) (citing *State v. Wolf*, 134 Wn. App. 196, 199, 139 P.3d 414 (2006)). In other

---

168 Wn. App. 621, 625-30, 279 P.3d 897 (2012).

7

words, a stipulation eliminates the need for proof on a fact or issue. *See* 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE § CR 2A Stipulations, at 20 (6th ed. 2013); *Wolf,* 134 Wn. App. at 197. When a party stipulates to a trial court's factual findings, that party is precluded from arguing on appeal that insufficient evidence supports those findings. *See State v. Ellison,* 172 Wn. App. 710, 715-16, 291 P.3d 921 (2013).

However, because it is the province of courts to decide issues of law, trial and appellate courts are not bound by stipulations to legal conclusions. *E.g., State v. Drum,* 168 Wn.2d 23, 33, 225 P.3d 237 (2010). In a case analogous to this one, our Supreme Court held it is error for an appellate court to refuse to address a criminal defendant's sufficiency of the evidence claim on its merits, even when the defendant stipulated that the evidence was sufficient to find him guilty. *Id.* at 34.

In *Drum,* Patrick Drum entered into a contract to participate in drug court, which provided for the dismissal of a burglary charge if he completed substance abuse treatment. *Id.* at 27-28. In the contract, Mr. Drum stipulated that the facts in the police reports were true and sufficient to support a finding of guilt. *Id.* at 28. Mr. Drum eventually left the drug court program. *Id.* at 29. The trial court held a bench trial and found Mr. Drum guilty of burglary on the stipulated facts. *Id.* at 29-30.

8

On appeal, Mr. Drum argued the evidence was insufficient to convict him of burglary. *Id.* at 30. The Court of Appeals refused to address Mr. Drum's challenge to the sufficiency of the evidence on its merits, holding that Mr. Drum waived this challenge when he signed the drug court contract. *Id.* at 31.

Our Supreme Court held that the Court of Appeals erred in refusing to consider the merits of Mr. Drum's challenge to the sufficiency of the evidence, even though Mr. Drum stipulated the evidence was sufficient to convict him. *Id.* at 34. The court reasoned that the question of whether evidence is sufficient to support a conviction is an issue of law and, therefore, the Court of Appeals was not bound by Mr. Drum's stipulation that the evidence was sufficient to find him guilty of burglary. *Id.* at 33. The *Drum* court then reached the merits of Mr. Drum's challenge and independently determined the evidence was sufficient to sustain his burglary conviction. *Id.* at 34-39.

Although B.W. stipulated that he was gravely disabled, grave disability is a legal conclusion.[2] Like Mr. Drum's stipulation that the evidence was sufficient to find him guilty, this court is not bound by B.W.'s stipulation that he was gravely disabled. Like in

---

[2] Although denoted as a finding of fact, whether B.W. was gravely disabled is a conclusion of law. *See M.K.*, 168 Wn. App. at 624 n.4. This court treats incorrectly labeled findings as conclusions of law. *Id.* at 623 n.3.

*Drum*, it would be error for this court to refuse to address B.W.'s sufficiency of the evidence claim on the basis that he stipulated to grave disability.

The problem here is that B.W. only stipulated to the allegations in the commitment petition. The petition alleged B.W. was gravely disabled (which, as discussed, is not binding on this court), and also incorporated the facts from Dr. Gunderson's four page report. Although the trial court entered additional factual findings consistent with the definitions of "gravely disabled" in RCW 71.05.020(17), the commitment order does not contain a stipulation to these additional findings. If it did, B.W. could not argue on appeal that he was not gravely disabled. But because it did not, we must review the stipulated facts and testimony from the hearing and independently determine whether they support the trial court's additional factual findings, as well as the court's legal conclusion that B.W. was gravely disabled. *See Drum*, 168 Wn.2d at 34-36.

B.      SUFFICIENT EVIDENCE ESTABLISHED B.W. WAS GRAVELY DISABLED

B.W. argues insufficient evidence supports the trial court's determination that he was gravely disabled and in need of involuntary civil commitment.

There are two alternative statutory definitions for "grave disability." RCW 71.05.020(17). A person may be committed under either prong. *LaBelle*, 107 Wn.2d at 202. An appellate court may also affirm a commitment order on either prong supported

10

by the record. *Cf. id.* at 213. Here, the trial court entered factual findings consistent with both statutory definitions, plainly concluding B.W. was gravely disabled under both statutory alternatives.

This court will not disturb the trial court's findings if they are supported by substantial evidence. *Id.* at 209. If they are, this court then determines if the findings support the trial court's conclusions of law and judgment. *Id.*

1. *Subsection (a)—Failure to Provide for Essential Human Needs*

Under the first statutory alternative, a person is gravely disabled when, as a result of a mental disorder, he or she is "in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety." RCW 71.05.020(17)(a). To prove grave disability under this prong, "the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *LaBelle*, 107 Wn.2d at 204-05. The "failure or inability to provide for these essential needs must be shown to arise as a result of mental disorder and not because of other factors." *Id.* at 205. Although assaultive and hostile behavior could potentially lead

11

to serious physical harm, this is not the kind of danger this subsection contemplates. *Id.* at 212.

In finding of fact number six, the trial court found it was "highly probable" that B.W. was "in danger of serious physical harm resulting from a failure to provide . . . nourishment . . . clothing or shelter . . . [and] medical treatment." CP at 81-82. Substantial evidence supports the second portion of this finding—that B.W. failed to provide shelter and medical treatment. B.W. stipulated he was homeless, and Dr. Gunderson testified that if released, B.W. would likely stop taking his medication, not go to appointments, not comply with after-care services, and be unable to take care of his needs.[3]

While this evidence provided tangible examples of B.W.'s failure to provide for his needs, it does not support the first portion of the finding—that it was "highly probable" that this failure put B.W. "in danger of serious physical harm." CP at 81. Nothing in the commitment petition or in Dr. Gunderson's testimony established B.W. had ever been in or would be in danger of serious physical harm as a result of his failure to provide for his needs. Finding number six is unsupported by substantial evidence.

---

[3] B.W. is correct that no evidence supports the trial court's findings that he failed to obtain nourishment or clothing.

12

Accordingly, the trial court's findings do not support a conclusion that B.W. was gravely disabled under subsection (a).

2.  *Subsection (b)—Failure to Receive Care Essential to Health or Safety*

Under the second statutory alternative, a person is gravely disabled when, as a result of a mental disorder, the person "manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." RCW 71.05.020(17)(b).

To prove grave disability under this prong, the State must present evidence that includes "recent proof of significant loss of cognitive or volitional control," as well as a "factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety." *LaBelle*, 107 Wn.2d at 208. However, a person may still meet the grave disability standard under this definition even though he or she has stabilized or improved while in the hospital. *Id.* at 207.

In finding of fact number seven, the trial court found that B.W. had "manifested his . . . deterioration in routine functioning evidenced by loss of cognitive or volitional control over his . . . actions," and that he "would not receive, if released, essential care for his . . . health or safety." CP at 82.

13

The trial court properly entered the first portion of this finding. In the report incorporated into the commitment petition, Dr. Gunderson alleged B.W. "suffer[ed] from a mental disorder which impair[ed] his cognitive and volitional functioning." CP at 77. B.W. stipulated to this factual allegation. B.W. argues the State did not establish his baseline functioning and, therefore, insufficient evidence supports this finding. However, because he effectively stipulated to this portion of the finding, he cannot argue on appeal that it is unsupported by sufficient evidence. *See Ellison*, 172 Wn. App. at 715-16.

Substantial evidence also supports the second portion of finding number seven—that B.W. would not receive, if released, essential care for his health or safety. Based on B.W.'s history of refusing medication while at Eastern State, going off his medication while in the community, and not going to appointments, Dr. Gunderson opined B.W. would not take his medications or comply with after-care services if released. She believed the hospital level of care was essential for B.W.'s health and safety needs, and B.W. would not likely be able to take care of those needs if released. Additionally, Dr. Gunderson testified B.W. needed substance abuse treatment for marijuana, huffing inhalants, and methamphetamine. It was undisputed the reason why B.W. had not been accepted into substance abuse treatment was because of his paranoia and homicidal ideations, caused by his mental illness.

14

No. 34388-0-III
*In re Involuntary Treatment of B.W.*

The trial court's finding number seven is supported by substantial evidence, and this finding supports the court's conclusion that B.W. suffered from a grave disability under RCW 71.05.020(17)(b). Accordingly, we affirm the trial court's April 2016 order committing him to 180 days of involuntary treatment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

15