# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JENNIFER E. LINDSAY-SHINSATO and DOUGLAS T. SHINSATO, wife and husband, and the marital community comprised thereof,<br><br>Respondents,<br><br>v.<br><br>JEAN M. HERMAN and JOHN DOE HERMAN, wife and husband, and the marital community comprised thereof,<br><br>Appellants. | No. 52863-1-II<br><br><br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Jennifer Lindsay-Shinsato and Jean Herman were involved in a vehicle collision. The issue of damages proceeded to a jury trial, and the jury returned a verdict for Lindsay-Shinsato.

Herman appeals, arguing that the trial court erred by granting Lindsay-Shinsato's motion in limine and by giving two jury instructions, instruction 8 and supplemental instruction 12. Lindsay-Shinsato argues that Herman failed to preserve her argument regarding supplemental instruction 12 because she did not object at trial.

We hold that the trial court did not err by granting Lindsay-Shinsato's motion in limine or by giving instruction 8. We also hold that Herman raises a manifest error affecting a constitutional right regarding supplemental instruction 12, but that the trial court did not err when giving the instruction. Thus, we affirm.

No. 52863-1-II

FACTS

Lindsay-Shinsato was injured in a motor vehicle collision caused by Herman in 2012. Herman admitted liability, but the parties disagreed regarding damages. Relevant to this appeal, the parties disagreed about the relationship between Lindsay-Shinsato's preexisting medical conditions and her post-accident injuries. The issue of damages proceeded to a jury trial, and a jury determined Lindsay-Shinsato and her husband were entitled to $726,164 for past and future economic and noneconomic damages.

## I. MOTION IN LIMINE "L"

The parties made a number of motions in limine before proceeding to trial. Specifically, Lindsay-Shinsato's motion in limine "L," sought to exclude:

> Any evidence or reference to Plaintiff's prior physical health . . . unless (a) such condition was symptomatic at the time of the injury, or was (b) a latent pre-existing condition that was made active by the injury.

Clerk's Papers (CP) at 21. Lindsay-Shinsato listed her asymptomatic medical conditions, including neck pain, shoulder pain, and cervicogenic headaches arising from a previous shoulder injury. Lindsay-Shinsato sought treatment for the shoulder injury, and her symptoms resolved. The medical records showed that Lindsay-Shinsato's last mention of pain prior to the collision in 2012 was more than a year prior to the collision.

At a hearing regarding motion in limine "L," Lindsay-Shinsato argued that evidence regarding these asymptomatic conditions should be excluded because these conditions were asymptomatic for over a year prior to the collision. Herman argued that the medical record was "open-ended" and that there was no affirmative showing that her condition resolved. 1 Verbatim Report of Proceedings (VRP) at 9. The trial court asked if Herman planned to present evidence

2

that Lindsay-Shinsato had complaints regarding her shoulder after December 2010. Herman's counsel responded, "I don't know that I have that, Your Honor." 1 VRP at 10. The trial court granted motion in limine "L" stating, "Unless you have some evidence showing that there were ongoing complaints, I'm obliged to not allow any sort of mention of the left shoulder under these circumstances." 1 VRP at 10.

## II. RELEVANT TRIAL TESTIMONY

Lindsay-Shinsato hired Dr. David Spanier, a physiatrist, to render expert opinions for trial. Dr. Spanier attributed a number of Lindsay-Shinsato's injuries to the collision. He testified that the collision caused cervicogenic headaches, cervical and cervicothoracic sprain/strain with segmental dysfunction, C4-5 and C5-6 disc protrusions, a left shoulder sprain with moderate degenerative change, mild AC (acromioclavicular) joint degenerative change, left supraspinatus partial thickness tear and tendonitis, upper extremity paresthesias, and cervical and thoracic myofascial pain. Dr. Spanier testified that without the collision, Lindsay-Shinsato would not have exhibited the pain symptoms she complained of following the collision.

A portion of Dr. Spanier's prerecorded testimony was inadvertently admitted because of improper editing.[1] Specifically, Dr. Spanier was asked if Lindsay-Shinsato's disc protrusions were related to the collision and he replied, "Potentially so, yes." 3 VRP at 339. Based on motion in limine "L," Herman immediately asked to speak to the trial court outside the presence of the jury. During these discussions, Herman argued that she should be able to present Dr. Spanier's testimony that the collision lit up Lindsay-Shinsato's disc protrusions. The trial court

---

[1] In their briefing, each party seemed to blame the other for this error. But both parties appear to have had some responsibility for editing, and both parties acknowledged they overlooked this portion during the editing process.

allowed testimony related to lighting up the preexisting disc protrusions, but ruled that no other preexisting conditions could be discussed. Thus, two additional portions of Dr. Spanier's prerecorded testimony were played. In these portions, Dr. Spanier responded to Herman's questioning, testifying that Lindsay-Shinsato had disc protrusions before the collision and these disc protrusions were subsequently lit up by the collision.

Herman hired Dr. Steven Klein, a neurosurgeon, to render expert opinions for trial. Dr. Klein testified and provided an opinion regarding Lindsay-Shinsato's injuries from the collision. Before trial, Dr. Klein and another doctor, Dr. Brandt Bede, examined Lindsay-Shinsato and wrote a joint report. Herman used this report to refresh Dr. Klein's recollection, but the report was not admitted into evidence. Dr. Klein testified that as a result of the collision, Lindsay-Shinsato suffered neck pain, cervical and lumbar strains, left head and left shoulder contusions.

During Herman's questioning, Dr. Klein read from Dr. Spanier's report that stated Lindsay-Shinsato's preexisting cervical disc protrusions were lit up as a result of the collision. The trial court excused the jury and Lindsay-Shinsato argued that Dr. Klein's testimony violated motion in limine "L." The trial court reiterated that there was to be no discussion of preexisting conditions. When the jury returned, Herman resumed questioning Dr. Klein, and immediately asked about disc protrusions, prompting another objection from Lindsay-Shinsato. The jury again left the courtroom. During argument over this objection, the trial court asked Herman for an offer of proof regarding Dr. Klein's testimony on the disc protrusions. Herman asked Dr. Klein whether Lindsay-Shinsato's disc protrusions related to the collision. Dr. Klein responded

4

that the disc protrusions were not related to the collision and that many members of the public have disc protrusions.[2] The jury then reentered the courtroom.

When asked again whether the disc protrusions related to the collision, Dr. Klein testified that one-third of the public has disc protrusions without any pain and, as a result, he could not correlate the disc protrusions to Lindsay-Shinsato's pain. Neither party asked Dr. Klein about any natural progression of Lindsay-Shinsato's disc protrusions, and despite Lindsay-Shinsato's objections, the trial court did not exclude or strike any of Dr. Klein's testimony.

Lindsay-Shinsato called Dr. Spanier in rebuttal. A juror submitted a question to Dr. Spanier regarding Lindsay-Shinsato's loss of ability to engage in physical activities that said, "To what extent should we discount the car crash as the cause of this loss on the grounds that her advancing age would have precluded those activities?" 5 VRP at 599. Dr. Spanier acknowledged that bodies degenerate with age, but stated:

> I believe the subject collision was the proximate cause that changed everything for her and sort of set her on a much more steep trajectory for decline. Would she eventually have got there? It's possible. . . . Just because we have a few grey hairs doesn't mean we have to throw in the towel and give up all.
> . . . .
> . . . And it's clear in my mind, the subject collision was the precipitating cause that changed it all for her.

5 VRP at 599-600.

---

[2] Herman asked, "Are they related to the collision?" And Dr. Klein responded, "No, they're not related to the collision, because a third of the public has these things and you can't correlate it with pain. It's such a common, ubiquitous finding that nobody can assume this is a causation of pain." 4 VRP at 508-09.

No. 52863-1-II

### III. JURY INSTRUCTIONS

Two jury instructions are at issue in this appeal: supplemental instruction 12 and instruction 8.

Following Dr. Klein's testimony related to Lindsay-Shinsato's cervical disc protrusions, Lindsay-Shinsato proposed a supplemental curative instruction. The proposed instruction stated:

> [A]ny pain or disability you find that Jennifer Shinsato suffered from her cervical facet joints, cervical discs or cervical disc protrusions left shoulder or in the form of cervicogenic headaches after the accident is attributable to the accident; therefore, any such pain or disability is the responsibility of the defendant.

5 VRP at 571.

Herman responded to the proposed instruction, "[I]t mentions a lot of different things in here. Really the only issue I think that is in the open is the cervical disc protrusions." 5 VRP at 572. The trial court stated that it would limit the proposed instruction to the disc protrusions and Herman responded, "That's fine. I think we can live with that." 5 VRP at 573. As a result, supplemental instruction 12 stated:

> If you find that Jennifer Shinsato suffered pain or disability from her cervical disc protrusions you should consider this pain or disability along with any other injuries, if any, proximately caused by the occurrence.

CP at 101.

Instruction 8, regarding preexisting medical conditions, was based on 6 *Washington Practice: Washington Pattern Jury Instruction: Civil* 30.18 (7th ed. 2019) *(WPI)*. Herman proposed that the trial court give the entire WPI 30.18 instruction, including the optional last paragraph which states: "There may be no recovery, however, for any injuries or disabilities that would have resulted from the natural progression of the pre-existing condition even without this

6

No. 52863-1-II

occurrence." The trial court gave the instruction without the optional "natural progression" language.[3]

During discussions about exceptions to the jury instructions, Herman took exception to the omission of the natural progression language in the last paragraph for instruction 8, stating, "Your Honor, my only, I guess, exception is that of course there is the natural progression portion of the jury instruction on [WPI] 30.18.01 . . . . Nothing further. Otherwise, I accept." 6 VRP at 767.

The jury returned a verdict and monetary damages in favor of Lindsay-Shinsato, and the trial court entered a judgment, which it later amended.[4] Herman appeals the amended judgment.

ANALYSIS

I. MOTION IN LIMINE "L"

Herman argues that the trial court erred by granting Lindsay-Shinsato's motion in limine "L" regarding evidence of preexisting degenerative conditions. We disagree.

---

[3] Instruction 8 stated:

> If you find that:
> (1) before this occurrence the plaintiff had a bodily condition that was not causing pain or disability; and
> (2) the condition made the plaintiff more susceptible to injury than a person in normal health,
> then you should consider all the injuries and damages that were proximately caused by the occurrence, even though those injuries, due to the pre-existing condition, may have been greater than those that would have been incurred under the same circumstances by a person without that condition.

CP at 112.

[4] The reasons for the amended judgment are not at issue on appeal.

7

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010). A decision is manifestly unreasonable if it adopts a view that no reasonable person would adopt. *Salas*, 168 Wn.2d at 669. A decision is based on untenable grounds or reasons if the trial court applied an incorrect legal standard or relied on unsupported facts. *Salas*, 168 Wn.2d at 669.

The mere existence of a preexisting medical condition is insufficient to infer a causal link from the complained of injury to the preexisting condition. *Little v. King*, 160 Wn.2d 696, 705, 161 P.3d 345 (2007). "When an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preexisting condition is not a proximate cause of the resulting damages." *Harris v. Drake*, 152 Wn.2d 480, 494, 99 P.3d 872 (2004). As a result, evidence of an asymptomatic preexisting condition is inadmissible because it "would only invite the trier of fact to speculate without an appropriate factual basis." *Little*, 160 Wn.2d at 705.

We hold that the trial court did not abuse its discretion by granting Lindsay-Shinsato's motion in limine "L." During argument on the motion, Herman acknowledged that she did not have evidence that Lindsay-Shinsato suffered from any symptomatic preexisting conditions before the collision with Herman. Because Herman conceded that she had no evidence that Lindsay-Shinsato suffered from any preexisting symptomatic condition, the trial court did not abuse its discretion regarding motion in Limine "L."

## II. OPENING THE DOOR

Herman argues that because Lindsay-Shinsato opened the door to her preexisting medical conditions, Herman should have been able to submit evidence that Lindsay-Shinsato's post-accident injuries were a natural progression of Lindsay-Shinsato's preexisting medical conditions. We disagree that Lindsay-Shinsato opened the door.

Generally, when one party opens the door to a topic, the other party may also introduce evidence to establish the truth for the jury. *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 766, 389 P.3d 517 (2017). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Diaz*, 175 Wn.2d at 462.

Here, a portion of Dr. Spanier's prerecorded testimony was inadvertently admitted. Lindsay-Shinsato and Herman both acknowledged that they overlooked this portion during the editing process. Following the mistake, Herman argued that she should be able to present Dr. Spanier's testimony that the collision lit up Lindsay-Shinsato's disc protrusions. The trial court allowed testimony related to lighting up the preexisting disc protrusions, but ruled that no other preexisting conditions could be discussed.

Herman argues that the trial court erroneously prevented Dr. Klein from testifying about a natural progression of Lindsay-Shinsato's disc protrusions because Lindsay-Shinsato opened the door through the inadvertently admitted portion of Dr. Spanier's testimony. However, Lindsay-Shinsato did not open the door. Both parties took some blame for the editing mistake. As a result of this mutual mistake, the trial court allowed some additional evidence. Herman appears to argue that because Lindsay-Shinsato's witness's testimony breached the subject of disc protrusions, Lindsay-Shinsato opened the door. But this is not the test. The statement was

elicited during a deposition that was subsequently redacted for trial. The redaction was the responsibility of both parties. Herman cannot show that Lindsay-Shinsato opened the door. Consequently, we hold that the trial court did not abuse its discretion by continuing to exclude evidence under its order regarding motion in limine "L."

### III. JURY INSTRUCTIONS

Herman argues that the trial court erred regarding instruction 8 and supplemental instruction 12. We disagree.

We review de novo whether a jury instruction is an accurate statement of the law. *Terrell v. Hamilton*, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). But we review for an abuse of discretion the trial court's decision regarding how to word an instruction or whether to give an instruction. *Terrell*, 190 Wn. App. at 498.

Jury instructions are generally sufficient if they (1) are supported by substantial evidence, (2) allow each party to argue its theory of the case, and (3) properly inform the trier of fact of the applicable law when all instructions are read together. *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015). The supporting facts for an instruction must consist of more than speculation and conjecture. *Fergen v. Sestero*, 174 Wn. App. 393, 397, 298 P.3d 782 (2013), *aff'd* 182 Wn.2d at 794. If a party's theory of the case lacks substantial evidence, a trial court must not instruct the jury on that theory. *Fergen*, 174 Wn. App. at 397.

A. *Instruction 8*

Herman argues that the trial court erred when it did not include the optional natural progression language from WPI 30.18 in instruction 8. Herman argues that "[t]he omitted

10

natural progression sentence . . . precluded Ms. Herman from arguing her theory of the case to the jury and made the instructions misleading." Br. of Appellant at 26. We disagree.

The trial court's instruction to the jury did not include the optional WPI language, which provides that a plaintiff cannot recover for any injuries that would have resulted from the natural progression of the preexisting condition. But an instruction that contains language regarding the natural progression of a preexisting condition—here Lindsay-Shinsato's disc protrusion— requires evidence to support that natural progression. *Fergen*, 174 Wn. App. at 397. The only evidence Herman cites in her brief to support this instruction is the Klein-Bede medical report. But this report was not admitted as evidence. Moreover, Dr. Klein specifically testified that he could not correlate Lindsay-Shinsato's post-collision injuries to her preexisting cervical disc protrusions. And Dr. Spanier testified that the collision caused Lindsay-Shinsato's health decline, and that her post-collision injuries were not a natural progression of her age.

Herman fails to point to any admitted evidence to support the natural progression instruction language. Thus, we hold that the trial court did not abuse its discretion by excluding the natural progression language from instruction 8.

B.      *Supplemental Instruction 12*

Herman argues that the trial court erred by giving supplemental instruction 12 because it "effectively decided medical causation as a matter of law," placed undue emphasis on Lindsay-Shinsato's case, and was an impermissible comment on the evidence which led to a violation of her right to a fair trial. Br. of Appellant at 21. Lindsay-Shinsato argues that Herman failed to object to supplemental instruction 12, thus failing to preserve any alleged error. In her reply, Herman argues that a comment on the evidence is a manifest error affecting a constitutional right

under RAP 2.5(a). Herman cites article IV, section 16 of the Washington Constitution which states, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." We address the issue, but hold that the trial court did not err by giving supplemental instruction 12.

In general, an appellate court will refuse to review a claim of error that was not raised at the trial court. RAP 2.5(a). However, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3). Article IV, section 16 of the Washington Constitution prohibits a judge from expressing to the jury his or her personal attitudes regarding the merits of the case or instructing the jury that issues of fact have been established as a matter of law. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Moreover, we presume judicial comments on the evidence to be prejudicial. *State v. Brush*, 183 Wn.2d 550, 559, 353 P.3d 213 (2015). Because a judicial comment on the evidence is explicitly prohibited by the Washington Constitution and is presumed to be prejudicial, a claimed error based on such a comment involves a manifest constitutional error that may be challenged for the first time on appeal. *Levy*, 156 Wn.2d 719-20. Thus, because Herman raises a manifest error affecting a constitutional right, we review whether the trial court improperly commented on the evidence by giving supplemental instruction 12.

We review whether a jury instruction amounts to a comment on the evidence de novo. *In re L.T.S.*, 197 Wn. App. 230, 234, 389 P.3d 660 (2016). An instruction that accurately states the law pertaining to an issue does not constitute an improper comment on the evidence. *L.T.S.*, 197 Wn. App. at 235. Rather, an improper comment on the evidence conveys a judge's personal

No. 52863-1-II

attitudes toward the merits of the case or allows the jury to infer what the judge personally believed or disbelieved of the particular evidence in question. *L.T.S.*, 197 Wn. App. at 235.

Supplemental instruction 12 states, "If you find that Jennifer Shinsato suffered pain or disability from her cervical disc protrusions you should consider this pain or disability along with any other injuries, if any, proximately caused by the occurrence." CP at 101. This instruction did not require that the jury find Lindsay-Shinsato suffered injury or damages as a result of disc protrusions. Only *if* the jury found that she suffered from disc protrusions, *then* the jury "should consider" this along with other injuries. CP at 101. Moreover, the instruction did not direct the jury to award damages. The instruction did not convey the judge's personal attitudes towards the merits of the case or her personal beliefs regarding the evidence. It was not an improper comment on the evidence. We hold the trial court did not err by giving supplemental instruction 12.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Melnick, J.

_____
Sutton, A.C.J.

13