IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  35062-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM J. KRAMER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — William Kramer appeals his conviction for child molestation in the first degree.  He argues that improper admission of child hearsay evidence and multiple other errors entitle him to a new trial.  We disagree and affirm.

FACTS

On Halloween in 2004, eight-year-old K.S. and her mother, Mary DeBoer, went trick-or-treating.  Their stops included a house that belonged to a childhood friend of Ms. DeBoer's, Lisa Kramer.  She is the sister of William Kramer.  The two women reconnected and agreed that Lisa Kramer's mother would care for K.S. and her brothers after school until Ms. DeBoer could retrieve them.  When the weather was bad, Ms.

DeBoer and her children sometimes spent the night at the Kramers' house instead of driving home, which was 17 miles out of town.

When the children came over after school, William Kramer—who lived in the Kramer home—would play with K.S., her brothers, and other children in the home. Kramer gave K.S. piggy back rides and candy. They also watched movies together. K.S. sensed she received special treatment from Kramer—he was more playful with her than the boys. Kramer would pull K.S. up to sit on his lap, despite making Ms. DeBoer uncomfortable and her requests to stop. Kramer would walk in on K.S. when she was using the bathroom. He would pat K.S. on her behind. Ms. DeBoer believed Kramer favored the girls. Eventually, Ms. DeBoer noticed a change in K.S.'s behavior—she became irritable, began acting out, and she did not like playing with the boys because "they were gross." Report of Proceedings (RP) (Jan. 5, 2017) at 99.

On March 22, 2005, K.S. did not go to the Kramer home after school but rode the bus home. K.S. told her grandmother that she "didn't want to be at Bill's" house. RP (Jan. 5, 2017) at 26. K.S. also told her grandmother that Bill did "icky things to her," "touched her [behind]," locked her in his bedroom, laid on top of her, and moved against her skin. RP (Jan. 5, 2017) at 29. K.S. indicated her private parts on the front and back of her body. She further stated that Kramer's "fingers had went in one of her holes."

2

RP (Jan. 5, 2017) at 31. During this disclosure, K.S. was wringing her hands, shaking, and crying. K.S. said the touching occurred more than once and usually happened in the bedroom. K.S. told her grandmother that Kramer said she would be in trouble if she told anyone or she would not be believed.

After Ms. DeBoer returned home from work, K.S. told her that Kramer put his hand down her pants and rubbed her privates, both in the front and in the back, he "put his fingers in her holes," and he would rub his own privates while doing so. RP (Jan. 5, 2017) at 104. K.S. said this had been happening for a long time and Kramer told her that "grownups wouldn't believe a little kid over somebody who was all grown up." RP (Jan. 5, 2017) at 103.

Ms. DeBoer reported what she heard to the police and took K.S. to see a forensic child interviewer, Karen Winston. K.S. told Ms. Winston that "boys were gross" and Kramer put his hand down her pants and touched her privates. RP (Jan. 5, 2017) at 128-29. On a diagram, K.S. marked her crotch, buttocks, and later her breast. K.S. said the touching occurred less than 10 times. Ms. Winston noted that K.S. used age appropriate vocabulary.

In 2005, the State charged Kramer with one count of first degree child molestation. *State v. Kramer*, No. 25006-7-III, slip op. at 1 (Wash. Ct. App. May 28, 2015)

3

(unpublished) (http://www.courts.wa.gov/opinions/pdf/250067.unp.pdf.)  Before trial, the

court entered findings of fact and conclusions of law that allowed hearsay statements

from K.S. to her mother, her grandmother, and Ms. Winston to be admitted under the

child hearsay statute.  The court also granted the State's motion in limine to present

ER 404(b) evidence of Kramer's prior conviction for molestation.

Kramer proceeded to trial.  The jury found him guilty of first degree child

molestation and the trial court sentenced him to life imprisonment as a persistent

offender.  *Kramer*, No. 25006-7-III, slip op. at 1.  Kramer appealed to this court, and we

stayed the appeal for several years while our Supreme Court considered and issued

rulings on a defendant's state constitutional right to a public trial.  Once those rulings

were issued, we lifted the stay and ruled in favor of Kramer on that issue.  We then

remanded the case for a new trial.  *Id.* at 7.

Once remanded, the State filed a motion for the trial court to adopt the rulings of

the prior trial court, including previous rulings on the admissibility of child hearsay

statements and the ER 404(b) evidence of Kramer's prior molestation conviction.  At this

time, K.S. was no longer a child, but a 20-year-old adult.  Kramer did not respond in

writing to this motion.

4

During argument on the State's motion, Kramer opposed the admission of his prior

molestation conviction. At one point, the trial court sought clarification on which issues

were being addressed. Kramer responded that the issues were whether to admit his prior

molestation conviction and a late disclosure *Brady*[1] issue. Kramer did not mention the

child hearsay issue. The court granted the State's motion and ruled the child hearsay

statements and evidence of the prior conviction were admissible.

During the second trial, K.S., now an adult, testified in more specific terms. She

testified Kramer had her take her clothes off and would rub up against her until he came.

She also testified Kramer would try to stick his fingers in her behind or vagina both

through and beneath her clothing. She estimated this occurred about 10 times and took

place both in the living room and in his bedroom. K.S. testified Kramer told her nobody

would believe her if she told what happened.

Throughout trial, Kramer pointed to the multiple inconsistencies in the State's

evidence. His trial theory focused mostly on inconsistencies between K.S.'s child hearsay

statements and her adult testimony. He argued the State failed to prove its case beyond a

reasonable doubt.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The jury found Kramer guilty of child molestation in the first degree. Kramer timely appealed.

## ANALYSIS

Kramer asserts (1) the trial court erred by admitting child hearsay statements even though K.S. was an adult at trial, (2) he was denied a fair trial through the State's speaking objections and vouching/bolstering of witnesses, (3) the State's multiple occurrences of prosecutorial misconduct denied him a fair trial, (4) the trial court improperly commented on the evidence several times, (5) cumulative error warrants reversal and retrial, and (6) pursuant to *Ramirez*,[2] certain legal financial obligations should be struck from his judgment and sentence.

### CHILD HEARSAY STATEMENTS

Kramer contends the admission of child hearsay statements in the second trial, when K.S. was an adult, violated his state and federal due process rights to a fair trial. We decline to address the issue because Kramer failed to preserve it and the issue does not qualify as manifest error.

Kramer does not dispute that his trial counsel failed to raise the issue he now seeks to raise on appeal. Generally, we refuse to review a claim of error raised for the first time

---

[2] *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

on appeal. RAP 2.5(a). An exception to the rule permits us to review a claim of manifest

error affecting a constitutional right. RAP 2.5(a)(3). The question here is whether the

claimed error is manifest.

> *State v. Lamar* explains the meaning of "manifest error":
>
> The defendant must make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial. "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at the time, the court could have corrected the error." "If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest."

180 Wn.2d 576, 583, 327 P.3d 46 (2014) (alteration in original) (citations omitted)

(quoting *State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009); *State v. Davis*,

175 Wn.2d 287, 344, 290 P.3d 43 (2012)). Placing ourselves in the shoes of the

trial court, we do not think the error was identifiable. Even Kramer writes: "[N]o

challenge has been set out in a published decision involving the issue currently

before the court." Appellant's Reply Br. at 4.

RCW 9A.44.120 is Washington's child hearsay statute. The purportedly

vague language provides: "*A statement made by a child when under the age of ten*

*describing any act of sexual contact* performed with or on the child . . . is

admissible in . . . *criminal proceedings* [if the court makes certain findings]."

7

Former RCW 9A.44.120 (1995) (emphasis added). Kramer argues that statements made by eight-year-old K.S. to her mother, her grandmother, and the forensic interviewer became inadmissible after K.S. turned 10 years old. This is a rather doubtful argument. The statutory language ties "[a] statement made by a child when under the age of ten" to "describing any act of sexual contact." It does not tie "[a] statement made by a child when under the age of ten" to "criminal proceedings." At a minimum, Kramer's argument is sufficiently doubtful that we will not presume the trial court, at the time of its ruling, should have foreseen its error. We conclude the claim of error was not manifest.

RIGHT TO A FAIR TRIAL

Kramer contends he was denied his right to a fair trial through the State's use of speaking objections and the State's vouching and bolstering of witnesses. We address these claims in turn.

### *Speaking Objections*

Generally, a speaking objection is "an objection that is phrased in a manner intended to intimidate the witness or to otherwise influence the witness's answer."

5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 103.8 at

52 (6th ed. 2016). The rules of evidence neither authorize nor prohibit the use of

speaking objections; the propriety of speaking objections is left to the individual trial

judge. *Id.*

Kramer claims he did not receive a fair trial through the following speaking

objections which he asserts, on appeal, should have been sidebars:

> [K.S.:] I don't feel like I'm going to turn into a puddle on the floor, but I want everybody in here to understand how important it is, and I need everybody to clearly understand the type of person he is.
> [DEFENSE]: Objection, Judge.
> [STATE]: I'll ask a different question, Judge.
> [STATE:] In the time since Mr. Kramer molested you, have there been ripple affects [sic] on your life from this?
> [K.S.:] Yes.
> [STATE:] Can you go into that a little bit, what sort of ripple effects have you had?
> [DEFENSE]: Object to that. The determination that we are having today, Your Honor, is the guilt and innocence of Mr. Kramer, not what has happened to her for whatever reason. Your Honor, if we get into all that it is getting out of the core of this.
> JUDGE STROHMAIER: Well, it depends on what is going to be asked on cross too.
> [STATE]: I'm not going to ask her for things that happened in her life since then, but it goes to credibility.
> JUDGE STROHMAIER: You'll have some leeway here, but don't go too far.
> Go ahead.
> [STATE:] You heard Counsel's objection and my response to the Court, but in a focused way, what are some of the ripple effects that happened to you as a result of what Mr. Kramer did?

[K.S.:]  A lot of mistrust from male figures, I've had nightmares and sleepless nights.  Do I need to continue?

[STATE:]  Well, did there ever come a time when you tried to hurt yourself?

[DEFENSE]:  Objection, this is so prejudicial.  It has nothing to do with the facts of the case and it is prejudicial.  I object.

JUDGE STROHMAIER:  Objection noted, but I think it is proper at this time.

RP (Jan. 4, 2017) at 242-43 (boldface omitted).

[DEFENSE:]  [K.S.], when you were admitted to the Wyoming Behavioral Institute for suicide that you testified to, when you were in counselling, did you report to the counselor that when you lived in Ford, Washington, which was about the same time frame—

[STATE]:  Objection.  Now he's getting into privilege that was talked about before, so it's one thing to talk about an allegation but it's another thing when she is talking in her own counselling sessions about what they were talking about, the allegation from CPS [Child Protective Services].

[DEFENSE]:  Judge, we already addressed all of this.

JUDGE STROHMAIER:  Now, the issue I ruled on counselling that is hers.  Now, allegations as to the time that related to CPS, if they are in fact the disclosure report that needed to be followed from her.  Now, if we have something else from some CPS worker who wrote the report?  We have a case worker—

[STATE]:  Judge, the only reason CPS had this case is they were manditory [sic] reporters and that is admissible.  Judge, I know there has been a report.  I guess with that I think it is terribly proper to ask about it but not proper to ask about counselling.

JUDGE STROHMAIER:  Right.

[DEFENSE]:  Judge, I'm asking the questions that I thought we agreed from the report that we already had the discussion about.  They covered it already, he's covered it, Judge.

RP (Jan. 4, 2017) at 255-56 (boldface omitted).

[DEFENSE:]  How much did she have to drink before you had this one night stand, if you know?

[STATE]:  Objection, relevance.

JUDGE STROHMAIER:  I have to sustain that.  I don't know if that's relevant.

[DEFENSE]:  I feel uncomfortable telling the relevance to the jury.  I don't want to do that, Judge.  She was intoxicated.

JUDGE STROHMAIER:  Whether she was or not, is that relevant to the charge?

[STATE]:  And, Judge, we had extensive pretrial hearings on [ER] 404(a) and 404(b) and none of this was brought up.

[DEFENSE]:  That's impeachment, Judge, she already testified that she didn't go to the bar.

JUDGE STROHMAIER:  I'll sustain it.

RP (Jan. 6, 2017) at 360 (boldface omitted).

[STATE]:  Judge, I move to admit State's No. 11.

JUDGE STROHMAIER:  Any objection?

[DEFENSE]:  Yes, I would object because that has nothing to do with this case, Judge, and this shows an emphasis on another case, and we had a jury instruction on that, Judge, and it is not this case.

[STATE]:  Judge, the entire reason for it is the common scheme and plan.

JUDGE STROHMAIER:  I'm going to allow it.  Admitted.

RP (Jan. 6, 2017) at 362.

[STATE:]  And you also testified that you had no idea as to what was going on, that your friend Bill Kramer was molesting your sister?

[DEFENSE]:  Objection, this is not this case.

[STATE]:  He before asked about his observations with regard to what was going on, so his ability to perceive is relevant.

[DEFENSE]:  It is prejudice and going to another case.  That is totally against [ER] 404(b) and is prejudicial.

11

[STATE]: I'm not trying to prove anything about Mr. Kramer right now, I'm talking about Mr. Carvalho's perceptions.

JUDGE STROHMAIER: His perception on the trial is relevant?

[STATE]: I think it was relevant if he was not aware that his sister was being molested, his awareness of whether [K.S.] was called into question.

[DEFENSE]: Objection to this being argued in front of a jury about his theory of the case.

[STATE]: I have no objection if the Court wants to pause and reread that limiting instruction and I will resume.

[DEFENSE]: This trial is about Mr. Kramer and this charge and not what happened 25 years ago.

JUDGE STROHMAIER: The question is about his ability to recall or his ability to perceive, so as long as it's limited to what that question of the purpose is for, limited to recollection; is that correct?

[STATE]: That's correct.

JUDGE STROHMAIER: Go ahead.

RP (Jan. 6, 2017) at 365-66 (boldface omitted).

The exchanges reflect banter from both sides. Other than one conclusory sentence, Kramer does not describe how the State's banter was so prejudicial as to have deprived him of his due process right to a fair trial. RAP 10.3(a)(6) requires an appellant to provide argument for any issue raised. A failure to do so warrants our declining review. *Skagit Hill Recycling, Inc. v. Skagit County*, 162 Wn. App. 308, 320-21, 253 P.3d 1135 (2011).

12

*Vouching/bolstering*

"Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

Bolstering refers to testimony that has no evidentiary purpose other than to support the credibility of a witness. *See State v. Bourgeois*, 133 Wn.2d 389, 400-01, 945 P.2d 1120 (1997). There is a distinction between improper bolstering and rehabilitation. After a witness's credibility is attacked, the party introducing the witness's testimony may offer evidence in rehabilitation. *Id.* Testimony that rehabilitates a witness's testimony is "bolstering," but it does not constitute bolstering in the abstract, which is akin to vouching. *Id.*

Kramer claims the State improperly bolstered a witness on two occasions. The first occasion is the following question and answer:

> [STATE:] Are you aware of any, any circumstances that would have led your daughter to want some kind of vengeance against the Kramer family, or some basis for her making this story up?
> [MS. DeBOER:] No.

RP (Jan. 4, 2017) at 168 (boldface omitted).

We disagree that this question and answer constitute improper bolstering. The question seeks to uncover bias at the time K.S. accused Kramer. Evidence of bias or lack

13

of bias is not improper. Also, the question was not asked to bolster K.S.'s testimony.

K.S. had not even testified when the Stated questioned Ms. DeBoer.

The second instance of improper bolstering claimed by Kramer is the following

question and answer:

> [STATE:]  When [defense counsel] asked you if you want to get Mr.
> Kramer, do you want him to be convicted of this crime if he is not guilty of
> it?
> [K.S.:]  No, if he is not guilty of it we wouldn't be here.

RP (Jan. 6, 2017) at 299 (boldface omitted).

We disagree that this question and answer constitute improper bolstering. A

witness cannot bolster her own testimony. But to the extent the answer implies that

Kramer is guilty because he is being prosecuted, that is a separate issue—it does not

involve bolstering.

> [STATE:]  Do you believe that your sister was telling the truth?
> [GARY CARVALHO:]  At that time, yes.

RP (Jan. 6, 2017) at 366 (boldface omitted).

Kramer's prior child molestation victim was Mr. Carvalho's sister. Mr. Carvalho

answered he believed his sister at the time. Even if the question and answer constitute

improper bolstering, this relates to a collateral issue—Kramer's prior conviction, not the

crime on trial. Any arguable error would not be prejudicial.

14

PROSECUTORIAL MISCONDUCT

Kramer contends the State committed multiple instances of prosecutorial

misconduct. We disagree.

To prevail on a claim of prosecutorial misconduct, Kramer must establish "'that

the prosecutor's conduct was both improper and prejudicial in the context of the entire

record and the circumstances at trial.'" *Thorgerson*, 172 Wn.2d at 442 (internal

quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126

(2008)). Misconduct is prejudicial if there is a substantial likelihood it affected the

verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). "Where lack of

prejudice is evident, we may dispose of the claimed error by addressing this issue alone."

*State v. Barbarosh*, 10 Wn. App. 2d 408, 413, 448 P.3d 74 (2019).

To demonstrate prejudice, the defendant must show a substantial likelihood that

the prosecutor's misconduct affected the jury's verdict. *Thorgerson*, 172 Wn.2d at 443.

However, a failure to object to an improper remark waives review of the error "'unless

the remark is so flagrant and ill intentioned that it causes an enduring and resulting

prejudice that could not have been neutralized by an admonition to the jury.'" *Id*.

(quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). In making that

determination, the court "focus[es] less on whether the prosecutor's misconduct was

15

flagrant or ill intentioned and more on whether the resulting prejudice could have been

cured." *Emery*, 174 Wn.2d at 762.

Kramer contends the State committed prosecutorial misconduct in multiple

instances. We address Kramer's contentions by dividing the instances into unobjected to

comments and objected to comments.

### *Unobjected to State comments*

The following instances are alleged prosecutorial misconduct in which Kramer did

not object at trial:

> [STATE:] Are you aware of any, any circumstances that would have led your daughter to want some kind of vengeance against the Kramer family, or some basis for her making this story up?
> [MS. DeBOER:] No.

RP (Jan. 4, 2017) at 168 (boldface omitted).

> [STATE:] When [defense counsel] asked you if you want to get Mr. Kramer, do you want him to be convicted of this crime if he is not guilty of it?
> [K.S.:] No, if he is not guilty of it we wouldn't be here.

RP (Jan. 6, 2017) at 299 (boldface omitted).

> [STATE:] Do you believe that your sister was telling the truth?
> [MR. CARVALHO:] At that time, yes.

RP (Jan. 6, 2017) at 366 (boldface omitted).

16

We previously established that none of these sets of questions and answers were improper. They, therefore, do not constitute prosecutorial misconduct.

Kramer argues that the following banter amounts to prosecutorial misconduct:

> [STATE]: Judge, I'm going to object to the question, he's asking for a narrative response. He can ask a direct question.
> [DEFENSE]: I'm just asking what happened for the jury.
> [STATE]: It's not my fault if [defense counsel] is not forming his questions on direct.

RP (Jan. 6, 2017) at 358.

Although the State's comment was snippy, we do not think it qualifies as misconduct.

### *Objected to comments*

Kramer objected during the following two exchanges. We italicize the comments that Kramer claims constitute prosecutorial misconduct:

> [STATE:] After [K.S.] told you that she was glad it was just the girls together and that Mr. Kramer acted like a kid, what did she say then?
> [DEFENSE]: Your Honor, I would note an objection for hearsay, or if he is trying to do this as truth of the matter.
> [STATE]: *Judge, I think this is all part and parcel of the truth that Your Honor admitted pretrial.*
> JUDGE STROHMAIER: Overruled.
> [DEFENSE]: Still note an objection, hearsay.
> JUDGE STROHMAIER: Thank you.

RP (Jan. 4, 2017) at 28-29 (emphasis added) (boldface omitted).

17

> [STATE:] Why did you want to move before the next school year started?
>
> [K.S.:] Am I allowed to say?
>
> [DEFENSE]: Object to the relevancy.
>
> [STATE]: If it's an allegation I need to explore that. My indication is she would indicate the reason for the move is—
>
> JUDGE STROHMAIER: I don't think that is relevant here, is it?
>
> [STATE]: *I think it is goes to the credibility of her accusations, her being [K.S.].*
>
> JUDGE STROHMAIER: As the child, that will be admitted.

RP (Jan. 4, 2017) at 165 (emphasis added) (boldface omitted).

Kramer's objections at trial did not relate to either set of claimed prosecutorial misconduct. Instead, they related to hearsay or relevancy. Kramer's claims of prosecutorial misconduct are, therefore, waived unless the prosecutor's comments are flagrant and ill intentioned. The State's comments, likely even appropriate, certainly do not rise to flagrant and ill intentioned.

We find Kramer's last contention is the only instance in which he properly objected to the State's alleged improper comment:

> [STATE to Mr. Carvalho:] Your sister, [Kramer's first child molestation victim], discovered you in there along with [K.S.]?
>
> [DEFENSE]: Objection, it's like something was wrong.
>
> JUDGE STROHMAIER: I believe discovery applies, go ahead.
>
> [DEFENSE]: Judge, I don't think he can testify to what his sister did. She's passed now so she can't testify what she saw and what she discovered.

18

> [STATE]:  *If he believes his client is telling the truth.*
> [DEFENSE]:  I object to that.
> JUDGE STROHMAIER:  The question was proper.
> Overruled.

RP (Jan. 6, 2017) at 462 (emphasis added) (boldface omitted).

Even though Kramer properly objected, we dismiss this contention on the prejudice prong of the prosecutorial misconduct test.  Kramer is required to show a substantial likelihood that the prosecutor's misconduct affected the jury's verdict. *Thorgerson*, 172 Wn.2d at 443.  We are not convinced here.

The trial court instructed the jury that the lawyers' remarks, statements, and comments were not evidence and the jury is to only consider the evidence admitted by the court.  We presume the jury followed the court's instructions and did not consider the State's comment. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).  For this reason, we decline to review this claim of error.

JUDICIAL COMMENTS

Kramer contends the trial court made multiple improper comments on the evidence in violation of the Washington Constitution, article IV, section 16.  Kramer did not object to any of the trial court's purported comments; however, a judicial comment on the evidence is an error of constitutional magnitude that can be raised for the first time on appeal. *State v. Sivins*, 138 Wn. App. 52, 59, 155 P.3d 982 (2007); RAP 2.5(a)(3).

19

Article IV, section 16 of the Washington Constitution states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." In other words, judges are prohibited from commenting on the evidence. WASH. CONST. art. IV, § 16; *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). A court comments on the evidence "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). "It is sufficient if a judge's personal feelings about a case are merely implied." *Sivins*, 138 Wn. App. at 58. This important constitutional principle serves to protect the jury from being unduly influenced by the court's opinion on the credibility, sufficiency, or weight of the evidence. *Id.*

Washington courts use a two-step analysis to determine whether reversal is required due to a judicial comment on the evidence. *Levy*, 156 Wn.2d at 723-24. To ascertain whether a court's conduct or remark rises to a comment on the evidence, a reviewing court examines the facts and circumstances of the case. *Sivins*, 138 Wn. App. at 58. If there was a judicial comment, it is "presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Levy*, 156 Wn.2d at 723.

Kramer contends the trial court improperly commented on the evidence in the following five instances:

*First instance*:

> [STATE to Ms. Winston:]  At any point during your forensic interview with [K.S.], did you have a sense, did she give you any indication that she was fabricating a story?
> [DEFENSE]:  Judge, I would object to that, that is a jury question.
> JUDGE STROHMAIER:  Can she testify to the veracity of a witness?
> [STATE]:  I think what I'm looking for, Judge, is based upon her expert training, if she saw anything that children typically do to indicate deception.
> JUDGE STROHMAIER:  I'll allow that.

RP (Jan. 4, 2017) at 141 (boldface omitted).

The court's comment was a question regarding whether the testimony was admissible.  The court did not indicate any attitude toward the merit of the testimony or the actual credibility of the witness.  Then, the court merely allowed that line of questioning.  It did not indicate any opinion regarding the testimony.  The court's question was not an improper comment on the evidence.

*Second instance*:

> [STATE to K.S.:]  Well, did there ever come a time when you tried to hurt yourself?
> [DEFENSE]:  Objection, this is so prejudicial.  It has nothing to do with the facts of the case and it is prejudicial.  I object.

21

JUDGE STROHMAIER: Objection noted, but I think it is proper at
this time.

RP (Jan. 4, 2017) at 243 (boldface omitted).

Here, Kramer objected to the question and the court merely stated that the question

was proper. Kramer attempts to twist the court's words to indicate an opinion on the

evidence. This is an unreasonable interpretation. The court did not imply or insinuate to

the jury any opinion on the evidence. The court's ruling was not an improper comment

on the evidence.

> *Third instance*:

> [STATE to K.S.:] Did your mental condition at that time have
> anything to do with what happened to you with Mr. Kramer?
>> [DEFENSE]: Objection, she's not a psychologist.
>> [STATE]: But she knows how she feels.
>> [DEFENSE]: That is out of her expertise.
>> JUDGE STROHMAIER: We're not talking about a clinical
> definition, we are talking about her personal opinion. I will allow it.

RP (Jan. 4, 2017) at 244 (boldface omitted).

Here, the trial court described its understanding of the question as requiring K.S. to

testify about something within her own knowledge—the connection between her mental

condition and what she testified Kramer had done to her. The court did not give its

personal opinion about the credibility of K.S.'s anticipated testimony or imply what

22

weight the jury should give to it.  The court's ruling was not an improper comment on the

evidence.

*Fourth instance*:

> [STATE:]  Sexual contact is not ejaculation.  [K.S.] talked here in court as a 20 year old woman who now understands what those things are, that the defendant ejaculated.  She couldn't have understood that as a child, but she can—
> [DEFENSE]:  Objection, speculation that a child wouldn't understand that.
> JUDGE STROHMAIER:  He's making an argument about that, he's not saying what she believes.

RP (Jan. 9, 2017) at 498.

This comment occurred during the State's closing argument.  The trial court

correctly stated the law that the State's closing argument was not evidence, but merely

argument.  The court's ruling was not an improper comment on the evidence.

*Fifth instance*:

> [STATE to Kramer:]  You also got in trouble with Mary for giving her children too much ice cream and candy; isn't that true?
> [DEFENSE]:  Objection, gets in trouble, and I don't think there has been any testimony.
> JUDGE STROHMAIER:  Those are the words he used back in 2006?  Let him testify first, *on impeachment* you can go into that afterwards.  You're putting the cart before the horse.

RP (Jan. 6, 2017) at 463-64 (emphasis added) (boldface omitted).

The State's questioning was an attempt to impeach Kramer on a fact. The State contends the trial court probably meant to say "redirect" instead of "impeachment" and a simple mistake does not amount to an improper comment.

However, the court used the term "impeachment." This term is likely common among laypersons. And the way it was phrased implied the court's opinion that impeachment had occurred. This amounts to a comment on the evidence. *Sivins*, 138 Wn. App. at 58.

After determining the trial court commented on the evidence, we presume the comment to be prejudicial, and the State must show Kramer was not prejudiced, unless the record demonstrates no prejudice could have resulted. *Levy*, 156 Wn.2d at 723. The State does not make an argument or show how Kramer was not prejudiced by this comment. The State merely asserts Kramer has not shown he was prejudiced. But the burden is not on Kramer to establish prejudice. The burden is on the State to show the comment was not prejudicial. Nevertheless, we find the record affirmatively shows no prejudice resulted.

The trial court instructed the jury not to consider any unintentional comments by the court—either through words or conduct—about the case, testimony, or evidence. We presume the jury followed the court's instructions. *Kalebaugh*, 183 Wn.2d at 586.

Moreover, shortly after the court's comment, the State rephrased the same question and Kramer did not object to it. Kramer admitted that he got in trouble for giving K.S. too much candy and ice cream. Kramer's lawyer then had an opportunity on redirect to rehabilitate Kramer on that issue. Although the court improvidently used the term "impeachment," the record shows this isolated word did not result in any prejudice.

CUMULATIVE ERROR

Kramer contends the cumulative errors in his trial combined to deprive him of his right to a fair trial and they warrant reversal. We disagree.

"The cumulative error doctrine applies when several trial errors occurred and none alone warrants reversal but the combined errors effectively denied the defendant a fair trial." *State v. Jackson*, 150 Wn. App. 877, 889, 209 P.3d 553 (2009). When there are no errors or the errors have little to no effect on the trial's outcome, the cumulative error doctrine does not apply. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Here, we have concluded that only one possible error occurred—Mr. Carvalho's testimony that he believed his sister at the time she accused Kramer. This one possible error was not prejudicial. Kramer's prior conviction was admitted into evidence. Whether Mr. Carvalho believed his sister at the time had no possible effect on the outcome of the trial.

25

LEGAL FINANCIAL OBLIGATIONS (LFOs)

Kramer asks this court to strike his $100 DNA (deoxyribonucleic acid) fee and his $200 criminal filing fee. The State concedes both fees should be struck.

Engrossed Second Substitute House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *State v. Ramirez*, 191 Wn.2d 732, 739, 426 P.3d 714 (2018). Among the changes was an amendment to former RCW 36.18.020(2)(h) (2015) to prohibit the imposition of the $200 criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h). As held in *Ramirez*, the changes to the criminal filing fee statute apply prospectively to cases pending on direct appeal prior to June 7, 2018. *Ramirez*, 191 Wn.2d at 738. Accordingly, the change in the law applies to Kramer's case. Because Kramer was indigent in the trial court and is still indigent on appeal, we direct the trial court to strike the $200 criminal filing fee.

The change in the law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. The record establishes that Kramer has two prior Washington felonies since 2002. Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample. *State v. Catling*,

26

No. 35062-2-III
*State v. Kramer*

193 Wn.2d 252, 259, 438 P.3d 1174 (2019); *see also* RCW 43.43.754; LAWS OF 2002, ch. 289, § 2. Kramer's prior felonies give rise to a presumption that the State has previously collected a DNA sample from him. The State has not requested an opportunity to contest this presumption. Therefore, we direct the trial court to also strike the DNA collection fee.

Affirmed, but remand to strike two fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                          Siddoway, J.